(No. 52858.—

POLE REALTY COMPANY, Appellant, v. WILLIE
SORRELLS, Appellee

*Opinion filed January 20, 1981.—Rehearing denied
March 27, 1981.*

SIMON, J., took no part.

Jay Goran, of Chicago, for appellant.

Alan Freedman, of Freedman & Bornstein, and Jeffrey L. Tarnen, Eric Gershenson, and William P. Wilen, of Chicago, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

In September of 1972, Willie Sorrells, the defendant, and her husband, entered into a leasing agreement with the Pole Realty Company (Pole), the plaintiff, whereby they agreed to rent a single-family house in Chicago for one year, at $147 per month. Thereafter, the lease was renewed on a year-to-year basis, using a form letter drafted by Pole which would set out the new rate of rent for the upcoming year. On May 17, 1978, Pole filed suit in the circuit court of Cook County to recover possession under the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1977, ch. 57, par. 5), alleging the nonpayment of rent for the preceding month and the failure of the defendant to heat the premises, which Pole stated the tenant was required to do under the terms of the lease. The plaintiff alleged that the gas utility company had discontinued supplying gas

because the defendant was $1,655.60 in arrears in her payment for services.

The defendant's answer pleaded two affirmative defenses. The first alleged that she was never properly served with a notice of nonpayment of rent required under section 5 of "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1977, ch. 80, par. 5). The second defense was that between "January of 1976, to and including the present date said [residential property] has been at various times in various degrees, in substantial violation of the Municipal Code of the City of Chicago ***"; and that as a result of these violations, the plaintiff had breached "the implied warranty of habitability between landlord and tenant." The defendant also alleged that the deteriorated condition of the residence forced her to obtain the monthly services of an exterminator. Too, she claimed that, in addition to other violations, defects in windows, doors and the roof permitted extensive heat losses, which increased substantially her gas service expense.

The defendant also filed a counterclaim alleging that, as a result of the plaintiff's breach of the implied warranty of habitability, she suffered physical and emotional injury in the amount of $1,000. She also requested payment of costs and attorney fees and a mandatory injunction ordering compliance with the Chicago housing code.

The circuit court, on July 11, 1978, denied the plaintiff's motion to strike the defendant's first affirmative defense but granted its motion to strike her second defense on the ground "that as a matter of law the implied warranty of habitability does not apply to the leasing of a single family residence." Consistent with this, the court also struck the defendant's counterclaim. The plaintiff's motion for costs and attorney fees, requested under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) for what it claimed were "false and fraudu-

lent" pleadings by the defendant in alleging that it refused to make any repairs to the building, was denied. Motions filed later by the parties, requesting the court to reconsider these holdings, were also denied. On August 14, the circuit court granted the plaintiff's motion for summary judgment and awarded possession to it. (Apparently the tenant did not successfully maintain the defense regarding notice.)

The defendant appealed to the appellate court, contending that the court erred in striking her second affirmative defense and counterclaim based on its holding that the implied warranty of habitability did not extend to single-family dwellings leased as rental property. Pole cross-appealed from the order denying its motion for reconsideration on its claim for court costs and attorney fees. The defendant was ordered by the appellate court to post a $1,000 bond and, during the pendency of the appeal, to make rental payments to the plaintiff of $157 per month commencing December 5, 1978, and for every month thereafter as long as the defendant occupied the premises.

Based on this court's holding in *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, the appellate court reversed the judgment and held that an implied warranty of habitability did extend here to single-family residences and that this warranty could be "fulfilled by substantial compliance with the pertinent provisions of the local building code." (78 Ill. App. 3d 361, 366.) The court accordingly reinstated the defendant's second affirmative defense and counterclaim. It reversed, too, the circuit court's granting of summary judgment for the plaintiff, since it concluded that a material issue of fact was now before the court as to whether the plaintiff had in fact breached the implied warranty of habitability. The appellate court affirmed the circuit court's denial of Pole's request for payment of costs and attorney fees. We granted the plaintiff's peti-

tion for leave to appeal. 73 Ill. 2d R. 315.

The issues presented to us are whether a warranty of habitability may be implied in the leasing of the single-family residence and whether, under section 41 of the Civil Practice Act, the plaintiff was entitled to recover court costs and attorney fees for what it contends were false and fraudulent pleadings filed by the defendant. Ill. Rev. Stat. 1977, ch. 110, par. 41.

In *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, it was held that warranties of habitability were implied in lease agreements entered into by tenants residing in multiple-unit dwellings. *Spring* held that this warranty was "fulfilled by substantial compliance with the pertinent provisions of the Chicago building code." (50 Ill. 2d 351, 366.) Pole contends that the holding in *Spring* was specifically limited to multi-unit rental properties and does not support the defendant's argument that there are implied warranties of habitability for leases of single-family dwellings. Pole argues that there are significant differences between single-family and multi-unit rental properties, in that under leases of single-family residential property the landlord does not provide janitorial services and, further, that the tenant is in control of the entire premises. Under the lease here, the tenant is also required to provide the heat and pay for all utility services.

There are, of course, factual differences between this case and *Spring,* but the differences are not material to the issue here. Given the reasoning articulated at length in *Spring,* a warranty of habitability is to be implied in leases of single-family dwellings as well as in leases of multiple-unit dwellings, and a breach of the warranty may be pleaded when the lessor in a forcible entry and detainer suit claims rent is due. A tenant will legitimately have the same expectations that a single-family dwelling will be fit to live in as he would have in the case of a structure with multiple dwelling units. Our conclusion that warranties of

habitability are to be implied in leases involving single-family dwellings is supported by decisions in other jurisdictions. (See, *e.g., Teller v. McCoy* (W. Va. 1978), 253 S.E.2d 114; *Fair v. Negley* (1978), 257 Pa. Super. 50, 390 A.2d 240; *Foisy v. Wyman* (1973), 83 Wash. 2d 22, 515 P.2d 160; *Mease v. Fox* (Iowa 1972), 200 N.W.2d 791; *Lemle v. Breeden* (1969), 51 Hawaii 426, 462 P.2d 470.) The plaintiff has not cited a single contrary holding. See also Cunningham, *The New Implied and Statutory Warranties of Habitability in Residential Leases: From Contract to Status,* 16 Urban L. Ann. 3 (1979); Eaton, *The Implied Warranty of Habitability in Illinois: Prairie State Lags Behind Other Industrial States in Landlord-Tenant Law,* 1979 So. Ill. U.L.J. Rev. 183; Comment, *Landlord and Tenant—Implied Warranty of Habitability— Demise of the Traditional Doctrine of Caveat Emptor,* 20 DePaul L. Rev. 955 (1971); Restatement (Second) of Property secs. 5.1 through 5.5 (1977); Annot., 40 A.L.R.3d 646 (1971).

The plaintiff unpersuasively argues that the defendant's affirmative defense of breach of an implied warranty is merely a device to permit her to live in the plaintiff's property without an obligation to pay rent. Clearly, a tenant's liability for rent continues as long as the tenant remains in possession of the leased premises. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 359.) Too, while on superficial examination there may seem to be some conceptual inconsistency between a tenant's remaining in possession and at the same time claiming a breach of a warranty of habitability, it is evident that the simple fact that a house can be inhabited does not necessarily mean that the warranty of habitability has been satisfied. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 40-42.) We, of course, do not suggest that in fact there has been a breach of a warranty of habitability. At the hearing to be conducted on remand, the plaintiff will be free to rebut the claim that there has been a breach and may

assert that the conditions complained of are due to waste or misuse of the premises by the tenant.

The plaintiff, however, is correct in its contention that the trial court erred in denying its motion to recover expenses and attorney fees for what it claims were fraudulent allegations by the defendant in her counterclaim that the plaintiff had refused to make timely repairs. To support its motion, Pole submitted an itemized account of all repairs made upon the premises since the defendant's occupancy. The appellate court erroneously affirmed the trial court's denial of the motion, stating that a motion under section 41 "does not apply where a party seeking costs and fees has prevailed on a motion to strike or dismiss since the allegations [upon which the section 41 motion is based] have not been found to be untrue." 78 Ill. App. 3d 361, 367.

Section 41 of the Civil Practice Act in part provides:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorneys' fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1979, ch. 110, par. 41.)

The purpose of this section was described in *Ready v. Ready* (1961), 33 Ill. App. 2d 145, 161: "Section 41 is an attempt of the legislature to penalize the litigant who pleads frivolous or false matters or brings a suit without any basis in law and thereby puts the burden upon his opponent to expend money for an attorney to make a defense against an untenable suit."

The defendant is correct in stating that deciding whether to allow a motion for expenses under section 41 is within the sound discretion of the trial court and that the granting or denial of penalties will not be overturned un-

less it can be shown that the court abused its discretion. (*Brandenberry Park East Apartments v. Zale* (1978), 63 Ill. App. 3d 253.) There is, however, nothing in the record to indicate that there was a hearing on whether to permit penalties under section 41 prior to the trial court's denial of the plaintiff's motion. We hold that Pole was entitled to a hearing prior to the court's disposition of its motion. (See *In re Application of County Collector* (1978), 66 Ill. App. 3d 437; *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369.) Though on a motion to strike or dismiss the allegations made by the adverse party will be regarded as being true for purposes of the motion, that will not prevent a court from later allowing penalties if in fact it is determined that the allegations were "made without reasonable cause and [are] found to be untrue ***." Ill. Rev. Stat. 1979, ch. 110, par. 41.

For the reasons given, the judgment of the appellate court is affirmed insofar as it reversed the circuit court's granting of summary judgment on the breach-of-warranty defense and the related counterclaim. The appellate court judgment is reversed insofar as it affirmed the circuit court's denial, without a hearing, of the plaintiff's motion for expenses. The cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Affirmed in part and reversed*
*in part and remanded.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.