PETER HARMON *et al.*, Plaintiffs-Appellants, v. CHARLES DAWSON *et al.*, Defendants-Appellees (Joseph W. Mitchell *et al.*, Third-Party Plaintiffs; Don Craig, Third-Party Defendant).

Fourth District   No. 4—88—0234

Opinion filed October 26, 1988.

Robert G. Kirchner, of Greaves, Lerner & Kirchner, of Champaign, for appellants.

Timothy J. Forman, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Urbana, for appellees Joseph W. Mitchell and Theresa Mitchell.

JUSTICE LUND delivered the opinion of the court:

On March 8, 1988, in a case brought for damages arising out of a breach of contract by plaintiffs Peter and Cynthia Harmon, the circuit court of Champaign County entered a judgment dismissing the case at the end of plaintiffs' evidence in favor of defendants Charles Dawson, James Hansen, and Joseph and Theresa Mitchell. Plaintiffs appeal.

The genesis of this dispute is the agreement by plaintiffs to purchase a house belonging to the Mitchells. Dawson and Hansen are the real estate brokers involved. The original agreement provided plaintiffs would buy the Mitchell house, and the Mitchells would supply a refrigerator with it. Joseph Mitchell testified he envisioned purchasing a used refrigerator for $150.

Cynthia Harmon went through the house several times. She noticed some tiles were loose in the bathroom near the showerhead. She advised her lender and was told the Farmers Home Administration (FHA) would not approve the loan unless the tiles were repaired. This information was relayed to the Mitchells through Dawson and Hansen. The Mitchells were aware the wall with the showerhead and soap dish had loose tiles and had contemplated having this fixed prior to the time the Harmons offered to purchase the house. The Mitchells agreed to repair the tiles if plaintiffs would forego the refrigerator, which was agreed to. Hansen indicated to the Mitchells that Dawson had arranged for someone to do the tile work. The Mitchells agreed

to pay $150 of the work. The eventual bill was $217.15, with the realtors splitting the difference. The work was done several days before closing. Cynthia Harmon was in the house around that time and observed the workers putting the tile on the new wall, which appeared to be plywood.

During this time, James McClughen also went to the house. McClughen is employed by Tile Specialists and has been in the field for 28 years. His business had received a call to give an estimate for this job. When he arrived, the workmen were already repairing the wall. He noticed the wall was plywood, and they were gluing the tiles on that surface. He testified using plywood as a subsurface is contrary to his experience and the guidelines of the Tile Council of America. He explained that plywood is very susceptible to expansion and contraction with temperature changes, and movement cracks the grout.

The night before closing, plaintiffs went through the house again and did not express dissatisfaction. On July 3, they took possession. On July 10, the soap dish fell off the wall. Cynthia Harmon testified that she could observe from the date of closing that the tiles on the new wall were not installed as well as those on the other walls. She also observed the grout was cracked and has continued to do so. On August 3, McClughen gave an estimate of $487.50 for repairs, which involved taking the wall out and replacing it. The only obvious damage McClughen mentioned seeing was the soap dish.

At the close of plaintiffs' case, defendants moved for a directed verdict. However, it is apparent they were actually moving for a judgment in their favor at the close of plaintiffs' case pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110). The court found the testimony failed to establish sufficient specificity to support the finding a contract existed. Further, it found that even if there were a contract, the Mitchells had complied with it. For these reasons, the court granted the motion, entering judgment for defendants and dismissing the case.

■■ Plaintiffs contend the court erred in granting the motion. In *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 45, the supreme court made clear that in ruling on such a motion, the court must determine if a *prima facie* case exists. First, the court must determine if there is evidence presented by plaintiffs on each element. If there is not, then the court should enter judgment for defendants. If there is, then the court must weigh the evidence and determine if the *prima facie* case still exists. The first determination is a question of law, and the second is a question of fact. On appeal, this decision should not be reversed unless it is against the manifest

weight of the evidence. We find the court's decision in granting defendants' motion erroneous, and we reverse.

■■■ In order for an oral contract to be binding and enforceable, its terms must be definite and certain. (*Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787, 791, 482 N.E.2d 377, 380.) It is well settled that in order for a contract to come into being there must be a meeting of the minds. (*Richton v. Farina* (1973), 14 Ill. App. 3d 697, 704, 303 N.E.2d 218, 223; *Bailey v. Eater* (1964), 53 Ill. App. 2d 37, 42, 202 N.E.2d 656, 659.) In the present case, such a meeting of the minds occurred.

The original sales contract provided that the Mitchells would supply a refrigerator with the house. When informed that the tile would have to be repaired, they indicated a willingness to have it done if plaintiffs gave up the refrigerator. Plaintiffs agreed, and a contract was created. Plaintiffs gave up their right to the refrigerator that was provided for in the original sales contract, and the Mitchells agreed to repair the loose tiles. It was also apparent both sides knew which loose tiles were involved. Mitchell stated it was the wall with the showerhead and soap dish. Harmon stated it was the wall with the showerhead. Admittedly, the extent of the repairs and the procedure to be used were left to the Mitchells. What was required was that the loose tiles be fixed.

Having determined plaintiffs' evidence supported a finding of a contract, we need now determine if the evidence established a *prima facie* case of a breach of contract. The court properly found that no expressed warranties or representations were made. The only agreement was that the loose tiles be repaired. The loose tiles were repaired, but within one to two weeks the soap dish fell off and the grout was cracking. The evidence established this was because the work was not performed in a workmanlike manner.

■■■ The courts in Illinois have held that one who contracts to perform construction work impliedly warrants to do the work in a reasonably workmanlike manner (*Dean v. Rutherford* (1977), 49 Ill. App. 3d 768, 770, 364 N.E.2d 625, 626-27), and that the failure to so perform constitutes a breach of contract (*Downes Swimming Pool, Inc. v. North Shore National Bank* (1984), 124 Ill. App. 3d 457, 465, 464 N.E.2d 761, 766). It is clear under the evidence thus far presented that the Mitchells could maintain an action for breach of this implied warranty against the installer of the tile. Actually, the installer has been brought into this action as a third-party defendant. The question for our determination is whether the implied warranty applies when the party agreeing to supply the construction is not in

the construction business. We hold it does under the facts in this case.

In enunciating the implied warranty, the supreme court stated:

> "The law implies in all contracts, in the absence of an express agreement to the contrary, that materials agreed to be furnished shall be suitable for the purpose, and that labor shall be performed with reasonable skill." (*Springdale Cemetery Association v. Smith* (1863), 32 Ill. 252, 259.)

We acknowledge that cases considering this warranty have involved a direct relationship between the injured party and the construction contractor. However, we see no reason why plaintiffs should be denied the benefit of the warranty because a third party did the construction. When plaintiffs agreed to forego their right to the refrigerator for the repairs, they were entitled to repairs done in a workmanlike manner. It became the duty of the Mitchells to insure that the work was so performed. Without this requirement, the Mitchells, and others in the same position, need only provide for the repairs to last past the closing. Such a result would be inequitable and contrary to reasonable contract expectations.

Defendants correctly assert there are no implied warranties of habitability with the sale of a used home. (*Sweetwood v. Mahoney* (1981), 93 Ill. App. 3d 788, 791, 417 N.E.2d 874, 876.) However, this case does not involve the warranty which arises concerning the condition of a whole house. This case involves one specific contract and the implied warranties evolving therefrom.

Plaintiffs have presented sufficient evidence to create a *prima facie* case, thus sufficient to avoid entry of a judgment pursuant to section 2—1110. Whether they will ultimately prevail on the merits must await the presentment of the entire case.

The judgment of the circuit court is reversed and remanded.

Reversed and remanded.

KNECHT and SPITZ, JJ., concur.