(No. 85333.—

THE BOARD OF DIRECTORS OF BLOOMFIELD
CLUB RECREATION ASSOCIATION, an Illinois
Condominium Association, Appellant, v. THE
HOFFMAN GROUP, INC., a Delaware corporation,
*et al.*, Appellees.

*Opinion filed May 20, 1999.*

420

BILANDIC, J., joined by HEIPLE and HARRISON, JJ., dissenting.

HEIPLE, J., also dissenting.

Robert P. Nesbit, Jeffrey S. Youngerman, C. Corey S. Berman and Stephen D. Sharp, of Kovitz, Shifrin & Waitzman, of Buffalo Grove, for appellant.

Kenneth W. Sullivan and Jennifer M. Davis, of Joel M. Carlins & Associates, Ltd., of Chicago, for appellee The Hoffman Group, Inc.

John H. Anderson and Jerome F. Buch, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee Ahmanson Developments, Inc.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

The Board of Directors of the Bloomfield Club Recreation Association (the Association) filed a complaint in the circuit court of Du Page County against defendants, claiming in count I that defendants breached an implied warranty of habitability with respect to a certain commonly held facility within their residential development. The circuit court dismissed count I of the complaint with prejudice pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1996)). The circuit court subsequently denied the Association's motion to reconsider the dismissal of count I and denied the Association leave to file an amended complaint. Consequently, the circuit court ordered its ruling dismissing count I final and appealable pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) and granted the Association's motion to stay the proceedings on the remaining count II of its complaint pending appeal. The appellate court affirmed the order of the circuit court. We allowed the Association's petition for leave to appeal (166 Ill. 2d R. 315) and now affirm the appellate court.

BACKGROUND

Bloomfield Club is a residential development in Du Page County that is comprised of single-family homes, town homes, common areas, and common amenities. The Association is the governing body of the Bloomfield Club homeowners and is responsible for managing, operating, and maintaining all of the common areas and amenities within the development. Defendants, The Hoffman Group, Inc. (Hoffman), and Ahmanson Developments, Inc. (Ahmanson), created the development and con-

structed and sold all of the residential units and common areas in Bloomfield Club.

Defendants also created the declaration of covenants agreed to by each homeowner, which, *inter alia*, grants each owner a right of easement for access to and use of all the common areas of the development. Included among the common areas governed by the Association, and central to the controversy at bar, is the development's clubhouse. It is a freestanding building that includes a library, a hospitality room, an exercise room, an indoor pool, and restrooms. Maintenance, taxes, and insurance for the clubhouse are assessed proportionally to each homeowner.

On February 29, 1996, the Association filed a two-count complaint against defendants. Count I of the complaint alleged that, upon selling the clubhouse to the Association, defendants had impliedly warranted its suitability for the uses and purposes for which it was intended. Count I further alleged that, in violation of this implied warranty, defendants developed, constructed, and sold the clubhouse with deficient design, workmanship, and materials. Specifically, the Association alleged that the clubhouse was defective due to: (1) the installation of substandard roofing materials; (2) the installation of an inadequate number of roofing nails; (3) deficient roofing ventilation; and (4) the improper installation of a heating/ventilation unit in the pool area. Count II of the complaint, alleging breach of fiduciary duty, remains alive in the circuit court and is not at issue in the present appeal.

In May 1996, Ahmanson and Hoffman separately moved to dismiss the Association's complaint pursuant to section 2—615 of the Code. 735 ILCS 5/2—615 (West 1996). Defendants argued that the implied warranty of habitability does not apply to unoccupied, nonresidential construction, such as the clubhouse, but only to occupied

residences. In its response, the Association countered that the implied warranty of habitability has been extended to apply to common areas within residential property, such as the clubhouse. The circuit court subsequently granted defendants' motion and dismissed count I of the Association's complaint with prejudice.

On November 1, 1996, the Association filed a motion to modify or reconsider the circuit court's order dismissing its complaint. The circuit court entered an order continuing the Association's motion and allowing it to file a proposed amended complaint. The Association timely filed its proposed amended complaint, which, in addition to the allegations contained in its original complaint, included the following allegations: (1) that the homeowners became property owners "with the full and reasonable expectation that they would be able to use such facilities as their own and that such facilities would be or would have been properly constructed"; (2) that the clubhouse contained rooms and facilities that could be found in a home; and (3) that the homeowners had used the clubhouse facilities as if they were located within the walls of their own homes. After considering the proposed amended complaint and hearing argument, the circuit court denied the Association's motion to reconsider and did not grant it leave to file its amended complaint. The appellate court affirmed the judgment of the circuit court (295 Ill. App. 3d 279), and we granted leave to appeal.

## ANALYSIS

In the present appeal, the Association initially argues that the circuit court erred in finding that count I of its complaint failed to state a cause of action for breach of an implied warranty of habitability.

Initially, we observe that a section 2—615 motion to dismiss challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997).

The critical inquiry in deciding upon a section 2—615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon*, 179 Ill. 2d at 344, citing *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996), and *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). A cause of action will not be dismissed on the pleadings unless it clearly appears that the plaintiff cannot prove any set of facts that will entitle it to relief. *Vernon*, 179 Ill. 2d at 344, citing *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542 (1991). Accordingly, in reviewing the circuit court's ruling on defendants' section 2—615 motion to dismiss, we must apply the *de novo* standard of review. *Doe v. McKay*, 183 Ill. 2d 272, 274 (1998).

Addressing the merits, we note that the doctrine of implied warranty of habitability is a creature of the judiciary that is narrowly tailored to protect residential dwellers from latent defects that interfere with the habitability of their residences. See *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426, 430 (1997); *Glasoe v. Trinkle*, 107 Ill. 2d 1, 13 (1985); *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 38 (1979). The doctrine was originally designed to help equalize the imbalance that exists in modern landlord-tenant relationships, where tenants have far less bargaining power and capacity to inspect and maintain premises than landlords. See A. Fusco, N. Collins & J. Birnbaum, *Damages for Breach of the Implied Warranty of Habitability in Illinois—A Realistic Approach*, 55 Chi.-Kent L. Rev. 337 (1979). The seminal case on this subject is *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351 (1972), in which this court rejected the doctrine of *caveat lessee* and held that the implied warranty of habitability applied to oral and written leases of multiunit dwellings.

Since *Jack Spring*, this court has gradually expanded the scope of the implied warranty of habitability. In *Pole Realty Co. v. Sorrells*, 84 Ill. 2d 178 (1981), this court extended the warranty to leases of single-family residences. In *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979), the court ventured beyond the landlord-tenant realm and held that the implied warranty of habitability applied to contracts for the sale of new homes by builder-vendors. In *Park v. Sohn*, 89 Ill. 2d 453 (1982), this court held that the warranty applied to the sale of homes by builder-vendors even when those vendors had lived in the homes for a reasonable amount of time before selling to original purchasers. In *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171 (1982), the court further extended the implied warranty of habitability to protect subsequent purchasers of new homes from builder-vendors. More recently in *VonHoldt*, 175 Ill. 2d 426, we held that the warranty is applicable to builders who make significant additions to previously built residences.

Notwithstanding this enlargement of the warranty's scope, we observe that the same original policy considerations have consistently guided the growth of this doctrine. The policy, as explained in *Petersen*, applies the implied warranty of habitability to the sale of homes to protect today's purchasers, who generally do not possess the ability to determine whether the houses they have purchased contain latent defects. *Petersen*, 76 Ill. 2d at 39-40; see also *VonHoldt*, 175 Ill. 2d at 430. The purchaser needs this protection because, in most cases, the purchaser is making the largest single investment of his or her life and is usually relying upon the honesty and competence of the builder, who, unlike the typical purchaser, is in the business of building homes. *VonHoldt*, 175 Ill. 2d at 430; *Petersen*, 76 Ill. 2d at 40.

Importantly, the basic rule governing the application of the implied warranty of habitability has been as

unwavering as the aforementioned policy considerations. This simple rule states, in essence, that the warranty is applicable against a lessor or builder of a residential unit where latent defects thereabout interfere with the inhabitant's reasonable expectation that the unit will be suitable for habitation. See *VonHoldt*, 175 Ill. 2d at 432-33; *Glasoe*, 107 Ill. 2d at 13-14; *Petersen*, 76 Ill. 2d at 40. What is critical about this rule, therefore, is not simply that there be a hidden defect in or around a residence, but that the defect interfere with the dweller's use of that unit *as a residence*. This emphasis on a defect's interference with the habitability of one's residence is the key distinction between the implied warranty of habitability and other warranties.

In the present case, the Association asks this court to further expand the doctrine of implied warranty of habitability by applying it to the circumstance where a commonly held amenity in a residential development contains defects that do not affect the habitability of the nearby residential dwellings. The Association bases its argument partly on its interpretation of *Petersen* as stating that the implied warranty of habitability protects an owner's expectation that any property conveyed by the builder-vendor be "reasonably suitable for its intended use." *Petersen*, 76 Ill. 2d at 41.

We find the Association's reliance upon *Petersen* to be a mischaracterization of our reasoning and holding in that case. The Association contends that *Petersen* supports an implied warranty of habitability claim based solely on the existence of defects within common areas and nothing else. In other words, the Association argues that count I of its complaint alleged all that was necessary to state a cause of action—simply that the clubhouse was not suited for its intended use. Unfortunately, the Association ignores the "habitability of residence" element of the implied warranty of habitability. The As-

sociation attempts to justify its disregard for the "habitability of residence" prong by highlighting our desire in *Petersen* to clarify the meaning of habitability, whereby the court analogized the implied warranty of habitability to the Uniform Commercial Code's doctrines of warranty of merchantability and warranty of fitness for a particular purpose. *Petersen*, 76 Ill. 2d at 41-42. The Association's reasoning is unavailing.

This court's opinion in *Petersen*, like those preceding and succeeding it, firmly maintained the warranty's requirement that the claimant allege both latent defects as well as interference by those defects with the habitability of the residence. At no time did the court rework the doctrine of implied warranty of habitability to apply to *any* structure, as the Association would have us believe. Indeed, in *Petersen* the court stated:

"The vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a *house* that is reasonably fit for use *as a residence.*" (Emphasis added.) *Petersen*, 76 Ill. 2d at 40.

Nowhere in *Petersen* did the court eliminate the warranty's requirement that an alleged defect interfere with the habitability of a residential unit. Likewise, there is no sound basis for the Association's position that *Petersen* expanded the applicability of the warranty of habitability to nonresidential units.

Furthermore, the Association mischaracterizes the purpose behind our comparison of the implied warranty of habitability with the commercial warranties of merchantability and fitness for a particular purpose. As that discussion in *Petersen* clearly illustrates, this court relaxed the term "habitability," not to diminish the residential component of the warranty's rule and bring nonresidential buildings within its scope, but, rather, to expressly reject the harsh, antiquated doctrine requiring that a claimant's dwelling be wholly unsafe and unliv-

able in order to support an implied warranty of habitability claim. This court stated in *Petersen* that the "use of the term 'habitability' is perhaps unfortunate," because prior courts had often construed that term too strictly, requiring plaintiffs to show that their residences were dangerously uninhabitable in order to prevail under the implied warranty of habitability. *Petersen*, 76 Ill. 2d at 37, 41-42. In departing from that inequitable approach, the court found favor in viewing the implied warranty of habitability as somewhat like the warranties of merchantability and fitness for a particular purpose. Specifically, the court noted the suggestion that the implied warranty of habitability be stated as requiring that " 'the builder-vendor would guarantee that, upon sale, the house would be of fair average quality, that it would pass without objection in the building trade, and that it would be fit *for the ordinary purpose of living in it.*' " (Emphasis added.) *Petersen*, 76 Ill. 2d at 42, quoting Comment, *Washington's New Home Implied Warranty of Habitability—Explanation and Model Statute*, 54 Wash. L. Rev. 185, 211-12 (1978). Therefore, even in drawing a comparison with the Uniform Commercial Code, the court kept intact both main elements of the implied warranty of habitability—a lack of defects affecting the residential unit and the fitness of that unit for use as a residence.

Following the decision in *Petersen*, the appellate court has also gradually expanded the implied warranty of habitability. Included among those decisions are *Tassan v. United Development Co.*, 88 Ill. App. 3d 581, 587 (1980) (warranty applies against developer-seller of new condominium unit), *Herlihy v. Dunbar Builders Corp.*, 92 Ill. App. 3d 310, 315-16 (1980) (warranty applies to actions arising from defects in common elements of condominium that interfere with habitability of residences), and *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163, 167 (1983) (war-

ranty applies to actions arising from defects in vacant common land of town house development that affect habitability of living quarters). The Association relies on the above cases for the proposition that the defects in the Association's clubhouse, like the defects that existed in the common areas in those three cases, support an implied warranty of habitability claim.

In our opinion, the Association's reliance on *Tassan*, *Herlihy*, and *Briarcliffe* is misplaced. While each of those cases involved implied warranty of habitability claims based on latent defects in common areas of condominium or town house property, the defects in all cases interfered with the habitability of the owners' residences. The court in *Briarcliffe*, for example, allowed the plaintiff's implied warranty of habitability claim based on defects in vacant common land for the reason that "[t]here may be circumstances in which a latent defect in the common land can affect the habitability of the living quarters." *Briarcliffe*, 118 Ill. App. 3d at 167 (noting that the same was recognized in *Tassan*). The Association's failure to draw any connection between the defects in their clubhouse and the habitability of their homeowners' living units is, therefore, dispositive. See *VonHoldt*, 175 Ill. 2d at 432-33, citing *Aronsohn v. Mandara*, 98 N.J. 92, 484 A.2d 675 (1984) (stating that an implied warranty of habitability claim may be brought so long as the alleged construction defect is sufficiently serious to interfere with the habitability of the home).

Lastly, the Association argues that, since their homeowners' memberships in the clubhouse were compulsory upon purchase of residential units in Bloomfield Club, they should enjoy the same implied warranty of habitability that would be available to more affluent homeowners whose similar recreational amenities are included within the walls of their homes. We are similarly unpersuaded by this contention. The fact that the homeowners

are required to contribute to the costs of the clubhouse and that they may use its amenities in the same fashion as other homeowners with similar amenities located in their homes does not change the fact that the alleged defects at issue in no way interfere with the habitability of the owners' residences. Since there is no connection between the defects of the clubhouse and the habitability of the homeowners' dwelling units, the Association's alternative reasoning here attempts to implicate the implied warranty of habitability via the fiction that the clubhouse *is* a part of the homeowners' dwellings. However, simply because there may be similarities between the recreational facilities of the clubhouse and certain amenities found within dwellings elsewhere does not mean that the clubhouse can then be considered to be "within" or part of the dwellings in Bloomfield Club for purposes of the implied warranty of habitability.

Our conclusion is by no means intended to absolve defendants of their responsibility to construct nonresidential buildings free of latent defects. On the contrary, we note that it is conceivable that plaintiffs could have made allegations under different causes of action. See, *e.g.*, *Altevogt v. Brinkoetter*, 85 Ill. 2d 44, 53 (1981) (recognizing implied warranty of workmanship in construction contracts); *Springdale Cemetery Ass'n v. Smith*, 32 Ill. 203, 206 (1863) (same); *Zielinski v. Miller*, 277 Ill. App. 3d 735, 738, 740 (1995) (alleging breach of implied warranty of workmanship and materials in addition to implied warranty of habitability); *Vicorp Restaurants v. Corinco Insulating Co.*, 222 Ill. App. 3d 518, 524 (1991) (acknowledging warranty of workmanship implied in construction contracts); *Harmon v. Dawson*, 175 Ill. App. 3d 846, 849 (1988) (same); *Dean v. Rutherford*, 49 Ill. App. 3d 768, 770-71 (1977) (same); *Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.*, 111 F.2d 875, 878-79 (7th Cir. 1940) (same); *Mallin v. Good*, 93 Ill.

App. 3d 843, 845-47 (1981) (recognizing availability of post-closing contract action based upon, *inter alia*, express warranty of workmanship, despite general merger doctrine, since contractual representations as to quality of premises are collateral undertakings not fulfilled by delivery of deed); *Brownell v. Quinn*, 47 Ill. App..2d 206, 208-09 (1964) (same); accord *Petersen*, 76 Ill. 2d at 41; *Rouse v. Brooks*, 66 Ill. App. 3d 107 (1978) (acknowledging action for breach of express warranty as to quality of premises, notwithstanding merger doctrine).[1] However, since the element requiring interference with the habitability of a residence is the distinguishing trait of the implied warranty of habitability and is absent from the Association's allegations, that warranty does not apply in the present case.

Indeed, a contrary conclusion would result in this court grossly expanding the doctrine to apply to cases where latent defects in common areas near residential structures do *not* interfere with the habitability of dwellers' residences. Under that approach, essentially *any* structure associated with a residential development would be covered by the warranty. Such a rule would not only contravene the policy and jurisprudence of the doctrine of implied warranty of habitability, but would unjustifiably spawn countless unprecedented causes of action—a predicament warned against by the dissenting justices in *VonHoldt*. See *VonHoldt*, 175 Ill. 2d at 435 (Heiple & Nickels, JJ., dissenting). We, therefore, hold that the implied warranty of habitability is inapplicable in the case at bar and that the circuit court properly

---

[1]We note that the Association failed to attach to its complaint a copy of the parties' contract of sale. Without the benefit of facts relating to that instrument, therefore, it cannot be assumed that the Association was foreclosed from bringing a breach of contract action based on representations as to habitability or quality of workmanship.

dismissed the Association's count I for failure to state a cause of action.

The Association's other contention on appeal is that the circuit court abused its discretion in refusing to allow it to file an amended complaint. As previously noted, the Association amended its complaint to contain the following new allegations: (1) that the homeowners became property owners "with the full and reasonable expectation that they would be able to use such facilities as their own and that such facilities would be or would have been properly constructed"; (2) that the clubhouse contained rooms and facilities that could be found in a home; and (3) that the homeowners had used the clubhouse facilities as if they were located within the walls of their own homes.

As a rule, the circuit court's ruling to allow or deny an amendment is a matter of discretion and will not be reversed absent an abuse of discretion. *In re Estate of Hoover*, 155 Ill. 2d 402, 416 (1993). We apply the following four factors in determining whether the circuit court's denial of a party's motion to amend constituted an abuse of discretion: (1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend. *Hoover*, 155 Ill. 2d at 416, citing *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

In the present case, we conclude that the circuit court did not abuse its discretion in denying the Association leave to file its amended complaint. Our review of the proposed amended complaint reveals that its allegations failed to cure the defective pleading. Indeed, the proposed amended complaint, like the original complaint, was devoid of any language alleging that the complained-of

defects had some impact upon the habitability of the homeowners' residences. We, therefore, hold that the circuit court did not err by denying the Association leave to file its amended complaint.

## CONCLUSION

In sum, we hold that the appellate court properly affirmed the circuit court's dismissal of count I of the Association's complaint in accordance with section 2—615 of the Code (735 ILCS 5/2—615 (West 1996)). The judgment of the appellate court is also affirmed with respect to the circuit court's denial of the Association's motion to reconsider the dismissal of its complaint and denial of leave to file an amended complaint.

*Appellate court judgment affirmed.*

JUSTICE BILANDIC, dissenting:

The majority's reading of *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979), is flawed. I respectfully dissent in order to preserve the legal principles established in *Petersen*.

In *Petersen*, this court held that the mere fact that a residence is capable of being inhabited *does not* satisfy the implied warranty of habitability. *Petersen*, 76 Ill. 2d at 41. For this reason, Justice Ryan, writing for a unanimous court, noted: "The use of the term 'habitability' is perhaps unfortunate. Because of its imprecise meaning it is susceptible of misconstruction." *Petersen*, 76 Ill. 2d at 41. The *Petersen* court explained that the implied warranty of habitability is "an implied covenant by the builder-vendor that the house which he contracts to build and to convey to the vendee is reasonably suitable for its intended use." *Petersen*, 76 Ill. 2d at 41. Therefore, the *Petersen* court focused its analysis on whether a residence was reasonably suited for its intended use, not on whether a residence was capable of being inhabited. *Petersen*, 76 Ill. 2d at 41-42. Accordingly, *Petersen* established that a purchaser has a right to expect a home that

is reasonably fit for use as a residence, and not something that is merely fit as a survival training model for the military.

Here, the majority apparently would not diminish the homeowners' rights to an interest in nothing more than the bare military standards. Nevertheless, the majority's opinion deprives the homeowners of their right to expect quality construction in the amenities for which they paid when buying their homes.

The Association's complaint alleges that an amenity which is a part of each homeowner's residence, the clubhouse, is not reasonably suited for its intended use. This is in accordance with the *Petersen* court's direction. Specifically, the Association alleges that, upon selling the clubhouse to the Association, defendants implicitly warranted that the clubhouse was "suitable for the uses and purposes for which [it was] intended." The Association further alleges that "[i]n breach of said implied warranty, Hoffman and Ahmanson [defendants] developed, constructed and sold the Clubhouse with inadequate design, workmanship, and materials" causing: (1) the installation of substandard roofing materials; (2) the installation of roofing shingles with an insufficient number of nails; (3) inadequate roofing ventilation; (4) the improper installation of a heating and ventilation system in the pool area; and (5) "[a]ny and all other defective conditions as set forth in the Reports attached hereto as Exhibits B and C, respectively." The Association also alleges that the referenced defects "were latent defects to the Clubhouse and not reasonably discoverable at the time of sale. Said defects have caused the Clubhouse to be unfit and not reasonably suited for the intended use."

Because this case is before us on a section 2—615 motion to dismiss, we must determine only whether the allegations of the complaint, when considered in the light most favorable to the Association, are sufficient to state a cause of action. See *Bryson v. News America Publica-*

*tions, Inc.*, 174 Ill. 2d 77, 86-87 (1996). Accepting the Association's allegations as true, those allegations sufficiently state a cause of action for breach of the implied warranty of habitability. A clubhouse built with these defects is not reasonably suited for its intended use.

The majority's holding ignores that the clubhouse is a part of each homeowner's residence. Membership in the clubhouse is mandatory upon purchase of a residential unit in Bloomfield Club. Each homeowner pays a proportion of the maintenance costs, insurance costs, and taxes for the clubhouse. The clubhouse contains a library, a meeting and party room, an exercise room, and restrooms. Certainly, if these rooms were contained within the four walls of one homeowner's residence, the alleged defects would affect the habitability of the residence. In condominium ownership, the individual owner's residence consists of his or her unit and the common elements, which in this case include the clubhouse. The defendants' failure to properly construct the clubhouse is therefore a violation of the implied warranty of habitability because the clubhouse is not reasonably suited for the purpose intended.

Illinois courts have long recognized that, in the context of community ownership, a homeowner has a right to expect that all common areas will be properly constructed. In *Herlihy v. Dunbar Builders Corp.*, 92 Ill. App. 3d 310 (1980), for example, the purchasers of condominium apartments sued the developer vendor and the general contractor, alleging construction defects in many of the building's common areas. Among these alleged defects were the following: cracking driveway pavement; a structurally defective pedestrian ramp, loading dock, and staircase; improper and deficient caulking of windows, frames, sills, and balcony doors; unsafe anchoring of balcony railings; crumbling retaining walls; and inadequate heating, cooling, and ventilation systems in the

laundry room and other common elements. The *Herlihy* court held that the implied warranty of habitability attaches to such common elements. The court reasoned that construction defects in shared portions of the building interfere with a purchaser's legitimate expectation that the structure be reasonably suited for its use as a residence. *Herlihy*, 92 Ill. App. 3d at 315-16.

Similarly, in *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163 (1983), an association representing homeowners in a planned unit development sued the developer, alleging that the vacant common land in the development had a defective water drainage system. The *Briarcliffe* court rejected the developer's argument that the implied warranty of habitability does not apply to vacant common land. The court reasoned: "We perceive no real distinction between the buildings and the common land in the application of the public policy protecting a purchaser of a new or reasonably new home from latent defects in the building or the required amenities since the purchaser in a substantial degree must rely in either case on the expertise of the building-vendor creating the defect." *Briarcliffe*, 118 Ill. App. 3d at 167.

The majority appears to have based its decision on the fact that the clubhouse is not a part of the physical structure of the Bloomfield Club homes. The freestanding nature of the clubhouse, however, should not preclude application of the implied warranty of habitability. This would produce inequitable results. Under this rationale, if the types of rooms found in the clubhouse were instead located in a single multiunit building that contained residential units, then the homeowners would be able to recover under the implied warranty of habitability. Application of the doctrine should not depend upon the happenstance of a certain type of development layout. Homeowners are forced to rely upon a builder's expertise regardless of the development's layout.

When the court in *Petersen* recognized a cause of action for breach of the implied warranty of habitability in the context of the sale of a new home, it considered "the vast change that has taken place in the method of constructing and marketing new houses." *Petersen*, 76 Ill. 2d at 39-40. The majority here has failed to consider the vast change that has taken place in the method of constructing and marketing residential developments such as Bloomfield Club, where homeowners share many common elements. No doubt, many homeowners are persuaded to buy homes in certain planned unit developments based on the common elements offered. These common elements are part and parcel of what is, in many instances, "the largest single investment" of a person's life. See *Petersen*, 76 Ill. 2d at 40. The implied warranty of habitability should protect a homeowner's interest in the common elements of this investment, just as it does the individual units.

I disagree with the majority's conclusion that the implied warranty of habitability does not apply to the alleged defects in the clubhouse. I would therefore hold that the circuit court erred in dismissing count I of the Association's complaint.

I would also hold that the circuit court abused its discretion in denying the Association leave to file its amended complaint. The amended complaint alleges facts to support the Association's position that the homeowners purchased residences that encompass the unit and all common elements, including the clubhouse. The amended complaint alleges that the homeowners had a right to expect that the completed structure be fit for the purpose intended, and that defendants breached their duty to properly construct the residence. The Association should have been allowed to file the amended complaint.

For the foregoing reasons, I respectfully dissent. Accordingly, I would reverse and remand for further proceedings.

JUSTICES HEIPLE and HARRISON join in this dissent.

JUSTICE HEIPLE, also dissenting:

For the reasons set forth in Justice Bilandic's dissenting opinion, which I have joined, I dissent from the majority's holding that the implied warranty of habitability is unavailable to plaintiffs in this case. I write separately however, to correct the majority's mischaracterization of my dissenting opinion in *VonHoldt v. Barba & Barba Construction, Inc.*, 175. Ill. 2d 426 (1997). Groping for a justification to deny the implied warranty of habitability to homeowners who choose to own certain amenities in common, the majority implies that application of the warranty in this case would spawn the sort of countless unprecedented causes of action against which I cautioned in my *VonHoldt* dissent. *VonHoldt*, 175 Ill. 2d at 435 (Heiple, C.J., dissenting, joined by Nickels, J.). The majority misses the point of that dissent. In *VonHoldt*, a majority of this court extended the implied warranty of habitability to include actions against builders. who make "significant additions" to previously built homes. I dissented from that opinion, which expanded the implied warranty liability against all manner of construction professionals based upon an ill-defined "significant addition" standard. The complete text of that dissent is as follows:

"The majority decision expands habitability liability for all mechanics, artisans, contractors, and home renovators who make significant additions to already existing structures. This new liability runs in favor of subsequent home buyers in the complete absence of privity of contract. This is new law which opens up vast possibilities for new causes of action. The opinion leaves to future decisions the definition of 'significant addition.' That this expanded liability will increase the cost of home improvements cannot be doubted. It is a basic law of economics that there is no free lunch. For a society that is already wallowing in law suits, it seems

to me that this judicial expansion of liability into new and undefined areas would be better left to the state legislature. Accordingly, I respectfully dissent." *VonHoldt*, 175 Ill. 2d at 435 (Heiple, C.J., dissenting, joined by Nickels, J.).

In contrast, plaintiffs in the instant case merely seek to be treated equally with single-family homeowners. It is clear from the record that the clubhouse facilities in question are an integral part of the plaintiffs' residences. There can be no sound reason to deny them the benefit of an implied warranty which would unquestionably apply if the facilities were contained within the four walls of a single-family home. The policy considerations which led to the creation of the implied warranty of habitability in the first place apply with equal force under the facts of this case. *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979). Accordingly, I dissent.