SECOND DIVISION
FEBRUARY 8, 2011

No. 1-09-3035

| | | |
|---|---|---|
| CIMCO COMMUNICATIONS, INC., and | ) | |
| VASCOM, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 07 CH 13631 |
| | ) | |
| NATIONAL FIRE INSURANCE COMPANY | ) | Honorable |
| OF HARTFORD, | ) | James R. Epstein |
| | ) | Judge Presiding. |
| Defendant-Appellee and | ) | |
| Cross-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion.

## OPINION

Plaintiffs CIMCO Communications, Inc., and Vascom, Inc., appeal from an order of the circuit court denying plaintiffs' motion for summary judgment and granting defendant National Fire Insurance Company of Hartford's cross-motion for summary judgment. Defendant cross-appeals portions of the circuit court's summary judgment order, and it also appeals the circuit court's order denying defendant leave to amend its counterclaim. We affirm.

## BACKGROUND

Plaintiffs collectively provide phone, Internet, and other data services to companies by leasing equipment from other telecommunications carriers, purchasing services from those carriers, and then reselling the services to its customers. Plaintiffs determined that they could increase their profits by purchasing their own equipment, so in 2004 they leased a facility in

downtown Chicago and contracted with a third party to install the necessary equipment. However, on June 6, 2004, the facility and the equipment that had been installed there were damaged by a flood. The damaged equipment was not repaired and replaced until about three months later.

Plaintiffs had previously purchased an insurance policy from defendants that plaintiffs believed covered such an occurrence, and plaintiffs submitted a claim under the policy for their losses. Among other damages, plaintiffs' claim included loss of "business income" that plaintiffs incurred as a result of the flood and the damage to the facility. In their claim, plaintiffs' included the losses that they sustained between the date of the flood and December 2005.

It was at this point that the disagreement that is the subject of this appeal arose. Defendant willingly paid plaintiffs' claimed losses for the three-month period between the date of the flood and the date that the equipment was repaired, but defendant refused to pay for any claimed losses beyond that point, arguing that the business income provision of the insurance policy only applied to losses incurred during the three-month "period of restoration." Plaintiffs disagreed, arguing that the provision encompassed all losses incurred for up to 12 months after the date of the flood. The parties had the damage appraised by an expert and attempted to resolve the controversy, but they were unable to do so because of their disagreement about several matters, including the categorization of damages and the meaning of the business income provision.

Consequently, on May 22, 2007, plaintiffs filed a declaratory judgment action in the circuit court and defendant counterclaimed. Plaintiffs argued that they were entitled under the policy's business income provision to recover all losses that were incurred between the June

2

No. 1-09-3035

2004 flood and December 2005. Defendants argued that the business income provision did not apply because plaintiffs (1) had not incurred a "business income loss" as defined by the policy and (2) had not suspended their operations during the period of restoration as required by the business income provision. Defendants further argued that, even if the business income provision did apply, the provision did not cover any losses incurred after the three-month period of restoration.

After discovery, the parties filed cross-motions for summary judgment. In an extensive written opinion, the trial court found that (1) whether plaintiffs had suffered a business income loss is an issue of fact, (2) plaintiffs had suspended their operations as required by the business income provision, and (3) the business income provision only applied to losses suffered within the three-month period of restoration. The trial court accordingly granted summary judgment to defendant.

Following summary judgment, defendant immediately moved to amend its counterclaim in order to obtain a judicial determination that the portion of plaintiffs' claim that defendant had already paid (that is, for losses during the three-month period of restoration) completely satisfied defendants' obligations under the policy. The circuit court denied defendants' motion to amend, as well as plaintiffs' contemporaneous motion to reconsider the court's summary judgment decision.

The circuit court adopted its summary judgment opinion in a final declaratory judgment order entered on October 14, 2009. Plaintiffs timely filed a notice of appeal, and defendant timely filed a notice of cross-appeal.

ANALYSIS

3

No. 1-09-3035

On appeal, plaintiffs contest only the circuit court's interpretation of the business income provision of the policy as limiting recovery to only those losses sustained during the three-month period of restoration. On cross-appeal, defendant reasserts its arguments on summary judgment below, namely, that it is entitled to summary judgment because (1) plaintiff did not suffer a business income injury within the meaning of the policy, (2) plaintiff did not suspend its operations as required by the business income provision of the policy, and (3) the business income provision only applies to losses incurred within the three-month period of restoration. Defendant further cross-appeals from the circuit court's order denying defendant leave to amend its counterclaim.

We will first examine the summary-judgment-related issues. Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2008). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We review an order granting summary judgment *de novo*. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 400 (2010).

The central question on summary judgment in this case is the proper construction of the business income provision of the policy. This provision states, in pertinent part:

"We will pay for actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' ***

4

We will only pay for loss of Business Income that occurs within 12 consecutive

months after the date of direct physical loss or damage."

The parties disagree over the meaning of three parts of this provision: (1) the phrase "loss of

business income"; (2) the phrase "necessary suspension of operations"; and (3) the extent of

liability for damages that are incurred outside of the "period of restoration."

We will begin our analysis with the third of these issues because, as we will explain later,

it is dispositive for the remaining summary judgment issues. Plaintiffs argue that the business

income provision covers any and all losses during a 12-month period following the date of

physical damage, provided that the losses are caused by a necessary suspension of operations

during the period of restoration. Defendants argue, however, that recovery under the business

income provision is limited to losses sustained due to a necessary suspension of operations

during a period of restoration that lasts no longer than 12 consecutive months.

In essence, under plaintiffs' interpretation, the business income provision would cover up

to 12 months' worth of losses that plaintiffs sustain due to suspension of operations, regardless of

the length of the restoration period. Under defendant's interpretation, the provision would cover

all losses incurred during a period of restoration and which plaintiffs sustained due to suspension

of operations during that period, so long as the restoration period is no longer than 12 months.

In this case, the competing interpretations amount to a nine-month difference in coverage.

Under plaintiffs' interpretation, defendant is liable for plaintiffs' business income losses during

the 12 months following the flood, while under defendants' interpretation, it is only liable for the

3 months of losses during which the equipment was under repair.

Our primary duty in construing an insurance contract is "to ascertain and give effect to

5

the intentions of the parties as expressed in the agreement. If insurance policy terms are clear and unambiguous, they must be enforced as written unless doing so would violate public policy." *Schultz*, 237 Ill. 2d at 400. However, "[a] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. [Citation.] Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation. [Citations.]" *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). "When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose. Thus, an insurance policy must be considered as a whole; all of the provisions, rather than an isolated part, should be examined to determine whether an ambiguity exists." *Id.*

As the circuit court noted, on the surface both of these interpretations appear to be reasonable based on the plain language of the business income provision alone. However, when the insurance policy is examined as a whole, it is apparent that plaintiffs' interpretation is unreasonable. In addition to the business income provision at issue here, the policy also contains an "extended" business income provision. This provision reads, in pertinent part:

"We will pay for the actual loss of Business Income you incur during the period that:

Begins on the date property is actually repaired, rebuilt or replaced and 'operations' are resumed; and Ends on the earlier of:

(a) The date you could restore your 'operations' with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in (1) above."

6

The plain language of this extended provision indicates that it is intended to cover any losses incurred for up to 30 days after the end of the period of restoration. Under plaintiff's interpretation of the business income provision, however, all losses for up to 12 months after the date of injury are covered under that provision. Yet plaintiffs' interpretation would render the extended business income provision superfluous because it would be subsumed by the business income provision.

If we accepted plaintiffs' interpretation, then the business income provision would cover plaintiffs' losses for 12 months after the date of the flood. However, the extended business income provision would cover plaintiffs' losses for only a maximum of four months after the flood, given that the parties agree that the period of restoration in this case lasted three months. This is an unreasonable result. Not only would such a result mean that two separate provisions of the policy concurrently cover the exact same loss, but it would also mean that the business income provision would cover *more* losses than the extended business income provision, rendering the "extended" provision meaningless. As is the case with any contract, we must assume that "every provision in an insurance policy was intended to serve a purpose." *Founders Insurance Co.*, 237 Ill. 2d at 437. Because plaintiffs' interpretation of the business income provision is inconsistent with the policy as a whole and would render the extended business income provision superfluous, we cannot deem plaintiffs' interpretation to be reasonable.

In contrast, we find that defendants' interpretation is reasonable. Under defendant's interpretation, the business income provision would cover any losses during the period of restoration, that is, the three-month period following the flood. The extended provision would cover any additional losses for up to 30 days between the end of the period of restoration and the

7

resumption of business operations at preflood levels. This interpretation gives each provision a complementary but exclusive position as a means of covering plaintiffs' claim for the loss of business income under the policy, and it does not render any other provision superfluous.

Because defendant's interpretation of the business income provision is reasonable and plaintiffs cannot offer a competing reasonable interpretation, the provision is not ambiguous. We agree with the circuit court's ruling and find that the business income provision covers only those losses sustained during the three-month period of restoration that followed the June 2004 flood. Summary judgment on this issue in favor of defendant was therefore proper.

Additionally, our finding on this issue makes it unnecessary to reach the circuit court's other summary-judgment-related rulings that defendant assigns as error. We will not consider those issues for two reasons. First, plaintiffs limited their appeal to the circuit court's determination that the business income provision limited recovery to the period of restoration. Because we affirm that finding and the grant of summary judgment to defendant, we need not consider defendant's other arguments on cross-appeal for summary judgment in its favor.

Second, because we find that the business income provision is limited to losses during the period of restoration, plaintiffs can recover under that provision only their business losses during the three months following the June 2004 flood. In December 2005, however, defendant voluntarily paid plaintiffs' claim for those losses. Under the voluntary payment doctrine, "money voluntarily paid under a claim of right to the payment and with full knowledge of the facts" cannot be recovered, unless the claim was unlawful and the payment was compulsory. (Internal quotation marks omitted.) *Alvarez v. Pappas*, 229 Ill. 2d 217, 221 (2008) (quoting *Getto v. City of Chicago*, 86 Ill. 2d 39, 48 (1981)). There is no indication in this case that

plaintiffs' claim was unlawful, nor does defendant argue that it was under any compulsion when it paid the claim. Because defendant has already compensated plaintiffs for their losses during the period of restoration, any arguments about whether plaintiffs incurred a business income loss or failed to suspend its operations as required during that same period are moot under the voluntary payment doctrine. We therefore will not consider them.

We turn now to defendant's contention that the circuit court erred by denying defendant leave to amend its counterclaim. Based on the circuit court's finding that defendant was only liable for plaintiffs' losses during the period of restoration, defendant moved to amend its counterclaim to request a judicial determination that the portion of the claim that defendant paid in December 2005 constituted the entirety of its obligation to plaintiffs under the policy.

Amendments to pleadings are permitted "[a]t any time before final judgment *** on just and reasonable terms." 735 ILCS 2-616(a) (West 2008). Whether to permit an amendment to a pleading is within the sound discretion of the trial court, and we review an order denying leave to amend for abuse of discretion. See *Board of Directors of Bloomfield Club Recreational Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 432 (1999). In order to determine whether the circuit court abused its discretion, we consider the following factors: "(1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend." *Id.* We may also " 'consider the ultimate efficacy of a claim as stated in the proposed amended pleading.' " *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 526 (2007) (quoting *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004)).

9

The decisive factor in this case is the final factor. Defendant sought leave to amend the counterclaim in order to add an additional claim seeking a declaratory judgment on its satisfaction of plaintiffs' insurance claim. Plaintiffs, however, have not contested the sufficiency of that claim payment. Defendants assert that it is possible that plaintiffs may contest the payment at a later date and that a judicial determination of its sufficiency at this time serves judicial economy by precluding a later lawsuit.

This issue is not ripe for adjudication at this point. Plaintiffs have not contested the sufficiency of defendant's payment, and there is therefore no controversy properly before either us or the circuit court that may be addressed through a declaratory judgment action. In the absence of a controversy, defendant's counterclaim is not actionable. See *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 40-41 (2008). Because the claim that defendant sought to add to its counterclaim is not justiciable at this point, the circuit court did not abuse its discretion in denying defendant leave to amend its counterclaim.

CONCLUSION

For the foregoing reasons, we find that the insurance policy limits plaintiffs' recovery under the business income provision to only those losses during a period of restoration that are incurred as a result of a necessary suspension of operations. We therefore affirm the circuit court's order granting summary judgment to defendant and denying summary judgment to plaintiffs. We further find that the circuit court did not abuse its discretion in denying defendant leave to amend its counterclaim.

Affirmed.