# SPRINGDALE CEMETERY ASSOCIATION

*v.*

# JOB SMITH and HIRAM PIERCE.

1. WITNESS — *competency, interest.* Where a witness is entitled to a distributive share of a fund which would be increased or diminished by the result of a suit in which he is called to testify, his interest would render him incompetent to testify on behalf of the party seeking to protect such fund.

2. As where the corporators of a cemetery association were to be reimbursed in their outlays in purchasing and improving their grounds, and also expected to

Springdale Cemetery Association *v.* Smith et al.

realize profits from the sales of lots, they would be incompetent to testify on behalf of the corporation, in a suit brought against it for the recovery of the price of labor and materials performed and furnished in the improvement of the grounds, because the fund to be distributed among them would be diminished should the result of the suit be unfavorable to the defense, and thus their interests would be in favor of the parties calling them.

3. ONE CANNOT BECOME *the voluntary creditor of another.* One man has no right to constitute another his debtor without his consent.

4. So where a mechanic engages to erect a building according to certain plans and specifications, and at a given price, he cannot recover for extra labor and materials unless they were furnished at the request of the party who is having the work done.

5. IMPLIED WARRANTY — *skill of mechanics, and quality of materials.* Where a mechanic or other workman undertakes to construct a piece of work, he impliedly warrants that it shall be so constructed that it will be reasonably sufficient for the purpose for which it is intended.

6. So where a party agreed to furnish the materials and build a vault in a cemetery, at a given price, and from defective materials or want of skill in its construction it fell down, and he did not rebuild it, it was held he could not recover the price of the labor or materials.

7. There is an implied warranty or undertaking in all cases, that the person so acting, is reasonably skillful in his profession, trade or calling, and that he will perform his engagements in that regard with that degree of skill. The law implies in all contracts, in the absence of an express agreement to the contrary, that materials agreed to be furnished shall be suitable for the purpose, and that the labor shall be performed with reasonable skill.

8. WHEN DEFENDANT MAY RECOVER JUDGMENT OVER. In an action commenced before a justice of the peace, to recover the price of labor and materials furnished in the building of a vault, the defendant filed an account, setting up damages which he claimed to have sustained by reason of the use of defective materials, and the want of proper skill on the part of the plaintiffs in the construction of the vault, in consequence of which it fell down. It seems, in such case, if the damages sustained by the defendant by reason of a non-compliance with the contract on the part of the plaintiff exceed the amount which the plaintiff would otherwise be entitled to recover, the defendant may recover such excess in the same action. *

APPEAL from the Circuit Court of Peoria county; the Hon. A. L. MERRIMAN, Judge, presiding.

Job Smith and Hiram Pierce, in the year 1856, being brick masons by trade, entered into a contract with the Springdale

---

* See *Stowe* v. *Yarwood et al.*, 14 Ill. 427.

Cemetery Association, for the erection of a vault upon the grounds of the Association. The terms of the contract, and dimensions of the vault were fixed by certain plans and specifications, and the following writing appended thereto :

" Contractor to furnish materials and finish work, except front door and stone sill and copings. Walls to be of good hard bricks, twenty inches in breadth. Walls to be laid hollow to the height of six feet. Excavation to be made by contractor in side hill. To be plastered with coat cement, on the outside, one-half inch thick. Front of foundation to be 18 inches below surface. Balustrade for front above the arch to be 12 inches thick. The floor to be cemented, also the inside walls. The arch to be 12 inches thick. I agree to furnish materials and do the work in the above plan and specification for the sum of $525.

(Signed)           SMITH & PIERCE."

The contractors, Smith and Pierce, proceeded to erect the vault, which progressed to completion, but before it was accepted by the association, the arch of the vault fell in. The contractors had, from time to time, during the progress of the work, received installments upon the price they were to be paid, and soon after the arch fell in they applied to the association for a settlement, which was refused upon the ground that the falling of the arch was the result of a want of skill in its erection, and this Pierce admitted to be true, and desired Smith to rebuild it, which he refused to do. Smith, however, finally agreed to reconstruct the arch, but failed to do so. The Association had the arch rebuilt at a cost, in work and additional materials, of about $350.

Smith and Pierce then instituted suit before a justice of the peace in Peoria county, to recover the balance which they claimed to be due them under the contract, as originally made, and for extra work and materials which they claimed to have performed and furnished in building the vault. The following is the account upon which the suit was brought :

" THE SPRINGDALE CEMETERY ASSOCIATION,
    1856.            To SMITH & PIERCE,             Dr.
Oct. and Nov. To 48,000 brick, furnishing lime and
              mortar, and laying up vault at $12

| | | | |
|---|---|---:|---:|
| | | per thousand,...................... | $576 00 |
| " | Cementing vault and furnishing mate- | | |
| | rials,............................ | 46 | 00 |
| " | Furnishing centre for arch,.......... | 20 | 00 |
| | | $642 | 00 |
| " | Credit at sundry times,.............. | 345 | 00 |
| | | * $297 | 00 " |

Defendant below also filed an account, in substance as
follows:

" SMITH & PIERCE,
           To SPRINGDALE CEMETERY ASSOCIATION,    Dr.
    1856.       For Cash paid L. Harman, for

| | | | |
|---|---|---:|---:|
| | excavation,. ................ | $53 | 00 |
| Oct. 25th to Nov. 3d, Cash paid — in all, ........ | | 345 | 00 |
| " | Damage for failure to perform | | |
| | contract, ................. | 500 | 00 |
| | | $898 | 00 " |

The trial before the justice resulted in a judgment for the
plaintiffs for $180, from which the defendant took an appeal to
the Circuit Court.

On the trial in the Circuit Court, the defendants still insisted
upon their counterclaim for damages, resulting from the fail-
ure on the part of the plaintiffs to perform their contract.

A question is presented upon the record, as to the compe-
tency of Hervey Lightner, who was called to testify on behalf
of the defendant. The witness being sworn upon his *voir dire*,
testified as follows:

<hr>

* NOTE BY THE REPORTER. It should be observed that justices of the peace in Peoria
county have, by legislative enactment, jurisdiction in suits of this character to an amount
exceeding that conferred upon justices of the peace generally, throughout the State. Act
Feb. 14, 1855.

I am a member of the Springdale Cemetery Association. I was one of the corporators when the law was passed. My relation to the corporation has never been changed by any act of the Legislature. I am one of the directors of the association, and have been since its organization. I have been secretary of it most of the time. The association, that is the defendant, owns personal property in this county, consisting of a pair of mules, wagon and harness, worth $175 to $200. There is little money on hand, if any. The association has a cart and some tools. As a member, have an interest in that property.

Question by plaintiff's attorney: Are you at this time one of the corporators of the association?

I don't know; I was one when the law was passed. I don't know whether or not I remain a corporator since the perfecting of the organization under the charter. The corporation bought a quarter section of land of William A. Hall, for $3,000. Three or four hundred dollars were paid down. I gave my note for $1,000. We called it worth $10,000. We set apart to Hall $3,333. To Baldwin the same amount, and to myself the same.

The association organized in the spring of 1855. They have sold lots for the aggregate sum of about $11,250. That money has all been expended on the cemetery grounds, and for the personal property mentioned. In case the plaintiff should recover a judgment in this suit, I suppose it would be paid from the proceeds of the sales of lots. If judgment should be recovered in favor of the association, the money would be appropriated to the improvement of the cemetery grounds, or payment of their debts. I have advanced about $2,000 to the association. I have never been repaid that; but it depends on circumstances whether it ever will be — that is, whether the proceeds from the sale of lots is sufficient to keep up repairs and reimburse that money. Our first object was to procure a good and permanent burial place, and also hoping to make it pay. We have one hundred and thirty acres ready for sale. The association keep roads and grounds in repair, and also the lots of those who own them, for a compensation. We keep the hands employed all the time. We keep one, two or three employed for the purpose of improving and keeping in order

lots for the owners.   We charge $2.50 to $4.00 per lot, a year, for taking care of them.   It costs as much to take care of them as we get for it.

In connection with this testimony, certain title papers were exhibited, from which title was deduced from the United States to the Springdale Cemetery Association, to the cemetery grounds mentioned.   The plaintiffs objected to the witness on the ground of interest in the result of the suit, and the court below sustained the objection and refused to permit him to testify, and the defendants took an exception.

The only remaining questions arising in the case, relate to the propriety of the third instruction given for the plaintiffs, and whether there was error in refusing to give the eighth instruction asked by the defendants.

The third instruction given for the plaintiffs is as follows :

3d.   The jury are instructed that if they believe from the evidence that plaintiffs furnished extra materials or performed extra labor in constructing said vault than as provided in the contract, jury should allow plaintiffs for such extra materials and labor what they have shown it worth.

The following is the eighth instruction asked by defendants, and refused by the court:

8th.   If the jury believe, from the evidence, that defendants have suffered damage from default or want of care and skill of plaintiffs, in performing their contract for building vault mentioned by witnesses in this cause, and that such damage exceeds the amount which plaintiffs would otherwise be entitled to recover, the jury should find for defendants the amount of such excess, as shown by the evidence.

The defendants excepted to the opinion of the court in giving the third instruction for the plaintiffs, and in refusing the eighth instruction asked by themselves.

The trial resulted in a verdict for the plaintiffs for $147.   The defendants moved for a new trial, which was denied, and they excepted.   Judgment was entered upon the verdict, and the defendants thereupon took this appeal.

33

Messrs. Norman H. Purple and Cooper & Moss, for the appellants.

Mr. H. Grove, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

It is insisted that the court erred in not permitting Lightner to testify on the trial below. He was one of the corporators of the company, he was one of the purchasers of the land upon which the cemetery was laid out, and for which he gave his note for one thousand dollars, for the payment of which he was still liable. He and the other purchasers were to be reimbursed their outlay from the proceeds of the sales of lots for burial purposes, after defraying the costs of improvements, and other expenses. And, after paying for the grounds and making improvements, he was to receive one-third of the profits arising from sales of the lots.

It then follows, that any liability which diminished the funds of the company would directly decrease his share of the profits. If the company were liable to the defendants in error for this labor, its payment would to that extent diminish the fund in which this witness has the right to participate. He then has an interest in the event of this suit, to the extent of one-third of the sum involved. If the company is held liable for its payment, the fund for distribution will be diminished to that extent, otherwise it will be increased to the same extent. We are, therefore, of the opinion that this is a disqualifying interest, and there was no error in rejecting his testimony.

It is also insisted that the third instruction given for plaintiffs below was erroneous. By it the jury were informed that if plaintiffs furnished any extra materials, or performed extra labor in constructing the vault, beyond what was required by the contract, that they would be entitled to recover the worth of such materials or labor, as shown by the evidence. This instruction does not correctly state the law. One man has no right to constitute another his debtor without his consent.

This instruction implies that it may be done. It will not be contended that the workmen in this case had any right to change the plan of this vault, by enlarging its dimensions, or to change the character of the materials from the original agreement, so as to render extra materials and labor necessary, and then recover pay for them. Such a change could not be made without the consent, express or implied, of the owners. So in erecting the vault, the builders had, under the agreement, no right to furnish extra labor or materials without the consent of the owners. They were bound to complete the building with the materials and labor as specified in the contract. This instruction should have been so qualified as to have left it to the jury to have found from the evidence that the extra labor and materials were furnished at the request of defendants below.

Again, the court erred in refusing to give defendants' eighth instruction. It announced the rule, that a mechanic or other workman, undertaking to construct a piece of work, impliedly warrants that it shall be so constructed that it will be reasonably sufficient for the purposes for which it is intended, and if the plaintiffs agreed to build the vault, and if from defective materials furnished by them, or from unskillful workmanship it fell down and was not rebuilt, they were not entitled to recover. It is one of the plainest principles of the law, that there is an implied warranty or undertaking in all cases, that the person so acting is reasonably skillful in his profession, trade or calling. And that he will perform his engagements in his calling with that degree of skill. The law implies in all contracts, in the absence of an express agreement to the contrary, that materials agreed to be furnished shall be suitable for the purpose, and that labor shall be performed with reasonable skill. This instruction asserted this rule and was therefore improperly refused.

For these errors the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*