In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1192

STARNET INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

ADAM RUPRECHT and DANIEL O'REILLY,
as Independent Administrator of
the Estate of PATRICK O'REILLY,
Deceased, as Assignees of DEERFIELD
CONSTRUCTION CO., INC., and
WESTFIELD INSURANCE COMPANY,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-01425 — **Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 2, 2020 — DECIDED JUNE 28, 2021

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* StarNet Insurance Company filed suit in diversity seeking a declaratory judgment specifying that the terms of a workers' compensation and employers liability policy it issued to P.S. Demolition, Inc. obligate it to pay nothing more for a workplace injury than the amounts that Illinois workers' compensation law requires P.S. Demolition to pay its injured employees. The district court entered judgment on the pleadings in favor of StarNet. *StarNet Ins. Co. v. Ruprecht*, 2019 WL 6877599 (N.D. Ill. Dec. 17, 2019). We affirm. Our reasoning tracks that of the district court.

## I.

This insurance coverage dispute arises out of a construction accident. Deerfield Construction Co. was the general contractor on a project to convert a defunct Ruby Tuesday restaurant at a Vernon Hills, Illinois shopping mall into a Maggiano's Little Italy restaurant. P.S. Demolition, Inc. had a subcontract with Deerfield to demolish the façade of the restaurant. In the demolition subcontract, P.S. Demolition agreed that it would provide all labor, material, equipment, and other things necessary to fulfill its obligations in a workmanlike manner, including taking all necessary safety precautions. P.S. Demolition also agreed to indemnify and hold Deerfield harmless from all claims, including a claim for bodily injury caused in whole or in part by P.S. Demolition, even if Deerfield itself might have caused or contributed to the injury.

On December 26, 2013, P.S. Demolition employees Patrick O'Reilly and Adam Ruprecht were engaged in demolition work at the site when an unsecured piece of capstone fell from the building, killing O'Reilly and injuring Ruprecht. Ruprecht

and O'Reilly's estate each filed personal injury lawsuits in Illinois state court, which were later consolidated, against Deerfield as the general contractor and P.S. Demolition as the subcontractor, charging them with construction negligence. Deerfield in turn filed a counter-complaint against P.S. Demolition which, as amended, included a claim for contribution. *See* 740 Ill. Comp. Stat. § 100/2(a); *Doyle v. Rhodes*, 461 N.E.2d 382, 385–87 (Ill. 1984) (although workers' compensation statute will foreclose suit against employer by injured employee if raised as affirmative defense, third party who shares liability for injury may nonetheless seek contribution from employer).

The Illinois Workers' Compensation Act sets forth a schedule to determine compensation for specific workplace injuries and imposes corresponding limits on an employer's liability for such injuries. In this case, the Act limited P.S. Demolition's liability to O'Reilly's estate to the sum of $5,993.91 and its liability to Ruprecht to the sum of $25,229.15. By virtue of the Illinois Supreme Court's decision in *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (Ill. 1991), those same limits would ordinarily apply when a third party to the employment relationship like Deerfield sues an employer in contribution for its *pro rata* share of common liability for a workplace injury. This is known as the "*Kotecki* cap."

An employer can enter into an agreement to waive the *Kotecki* cap, however. *See Virginia Sur. Co. v. Northern Ins. Co. of N.Y.*, 866 N.E.2d 149, 155 (Ill. 2007) (collecting cases). The state court held that P.S. Demolition had done just this when it agreed to indemnify Deerfield and hold it harmless for any injuries arising from P.S. Demolition's work. Thus, Deerfield

was free to seek contribution from P.S. Demolition for the latter's full *pro rata* share of liability for the injuries to O'Reilly and Ruprecht, notwithstanding the *Kotecki* cap.

After a bankruptcy court determined in a Chapter 7 proceeding that P.S. Demolition had no assets, the state court determined in the consolidated personal injury suits that P.S. Demolition's liability would be limited to its available insurance coverage.

In February 2019, as the personal injury suits were proceeding to trial, Deerfield (along with its insurer, Westfield Insurance Company, which we may ignore for present purposes) settled with Ruprecht and the O'Reilly estate for a sum substantially in excess of $75,000 plus an assignment to them of Deerfield's contribution claim against P.S. Demolition.

StarNet was P.S. Demolition's employer liability insurer at the time of the accident. In the wake of the settlement with Deerfield, StarNet, stepping into its insured's shoes, entered into a stipulated settlement with Ruprecht and the O'Reilly estate. Among other things, the parties stipulated that (1) Ruprecht and O'Reilly were P.S. Demolition's employees at the time of the accident; (2) P.S. Demolition admitted liability in the underlying action and agreed to entry of a judgment against it in the amount of $1 million; (3) this judgment reflected P.S. Demolition's pro rata share of the tort liability to Ruprecht and the O'Reilly estate; (4) StarNet reserved its defenses to insurance coverage for the accident that injured Ruprecht and O'Reilly; and (5) in the event that Ruprecht and the O'Reilly estate prevailed against StarNet in a declaratory

judgment action as to coverage for the accident, StarNet would pay them a total of $1 million.

Ruprecht and the O'Reilly estate proceeded to dismiss their negligence claims against P.S. Demolition. This resolved the underlying personal injury suits.

Part Two of the workers' compensation and employers liability policy that StarNet issued to P.S. Demolition provides that StarNet will pay all sums that P.S. Demolition is legally obligated to pay because of bodily injury suffered by its employees. Those sums include damages for which P.S. Demolition is liable to a third party to indemnify that party for any damages that the third party is required to pay as a result of an injury to P.S. Demolition's employee. At first blush, then, the StarNet policy potentially would cover the damages that P.S. Demolition owes directly to its injured employee as well as any amounts for which it is liable in contribution or indemnification to a third party (like Deerfield) based on the same injuries.

However, the StarNet policy also contains an exclusion which, as modified by an endorsement, provides that:

> This Insurance does not cover
>
> 1.liability assumed under a contract, including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act and the

> Workers Occupational Disease Act. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner.

R. 6-1 at 21.

As anticipated by the stipulation between StarNet and Ruprecht and the O'Reilly estate, StarNet filed this action seeking a declaratory judgment to the effect that it owes P.S. Demolition no coverage vis-à-vis the injuries to O'Reilly and Ruprecht beyond the modest amounts specified by the Illinois Workers' Compensation Act and the *Kotecki* cap. StarNet relies on the language of the exclusion quoted above regarding an "agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act." Here, P.S. Demolition in its demolition subcontract with Deerfield agreed to indemnify and hold harmless Deerfield for any damages arising from an injury to P.S. Demolition's employees, thereby waiving the *Kotecki* cap. That is what opened the door for Deerfield to seek contribution from P.S. Demolition for its full *pro rata* share of responsibility for the injuries to O'Reilly and Ruprecht. But that contractual agreement to waive the *Kotecki* cap, in StarNet's view, triggers the exclusionary language of the policy. The O'Reilly estate and Ruprecht, on the other hand, rely on the exception to the exclusion for "a warranty that your work will be done in a workmanlike manner." They argue that P.S. Demolition's alleged liability in the underlying personal injury action arose in relevant part from P.S. Demolition's failure to conduct the demolition in a workmanlike manner. Thus, as they see it, the exception applies and StarNet is obligated to pay any amount over the *Kotecki* cap that Deerfield

could recover on its contribution claim against P.S. Demolition—which claim has been assigned, of course, to O'Reilly's estate and to Ruprecht.

The district court granted judgment on the pleadings to StarNet, agreeing that P.S. Demolition's liability in contribution to Deerfield was specifically excluded from the coverage of the StarNet policy. Among other things, the court noted that Deerfield had reserved a breach of warranty claim against P.S. Demolition based on P.S. Demolition's alleged failure to conduct its demolition activities in a workmanlike manner. That breach of warranty claim, in other words, was *not* assigned to the O'Reilly estate and Ruprecht, and so they could not rely on a breach of warranty to trigger the exception language in the policy exclusion. *StarNet*, 2019 WL 6877599, at *4.

## II.

We review the district court's decision granting judgment on the pleadings to StarNet de novo. *E.g.*, *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 917 (7th Cir. 2020).

As set forth above, P.S. Demolition's liability for workplace injuries to its employees was limited, in the first instance, to the amounts specified by the Illinois Workers' Compensation Act. By virtue of *Kotecki*, that limitation included amounts sought in contribution by third parties to the employment relationship, including Deerfield. But by agreeing to fully indemnify and hold harmless Deerfield for any amounts that Deerfield might be required to pay as a result of injuries to P.S. Demolition's employees, P.S. Demolition waived the *Kotecki* cap. So there was no limit on Deerfield's ability to seek

contribution from P.S. Demolition for the injuries to O'Reilly and Ruprecht, and by virtue of the settlement with Deerfield and the assignment of the contribution claim to O'Reilly's estate and Ruprecht, they now stand in Deerfield's shoes as against P.S. Demolition.

However, because P.S. Demolition lacks any assets, the O'Reilly estate and Ruprecht can look only to StarNet as P.S. Demolition's insurer for compensation. And the express terms of the StarNet policy exclude from coverage "liability assumed under a contract, including any agreement to waive your right to limit your liability for contribution to the amount of benefits payable under the Workers Compensation Act." Although the underlying personal injury suit was one in tort, not contract, P.S. Demolition's liability in that suit—whether to O'Reilly's estate and Ruprecht or to Deerfield—was limited by the terms of the Workers' Compensation Act and the *Kotecki* cap. Anything above the *Kotecki* cap is recoverable solely as a result of P.S. Demolition's agreement with Deerfield, which waived the *Kotecki* cap. Consequently, liability on Deerfield's contribution claim against P.S. Demolition, which is what the O'Reilly estate and Ruprecht are pursuing now, is liability that P.S. Demolition assumed by contract. (Otherwise, it could have claimed the protection of the *Kotecki* cap.) And the policy expressly excludes such assumed liability.

The parties' dispute is one focused on the exception to this exclusion for a warranty that P.S. Demolition's work would be done in a workmanlike manner. This exception makes clear that although, as a general matter, "liability assumed under a contract" is excluded from the coverage of the employers liability policy, liability for breach of the employer's

contractual promise to complete its work in a workmanlike fashion is not excluded. *Western Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 877–78 (Ill. 1985). Under Illinois law, when one contracts to perform construction work, he impliedly warrants that he will do the work in a reasonably workmanlike manner. *See Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.*, 111 F.2d 875, 878–79 (7th Cir. 1940) (Illinois law); *Springdale Cemetery Ass'n v. Smith*, 32 Ill. 252, 259 (1863); *Pyramid Dev., LLC v. Dukane Precast, Inc.*, 40 N.E.3d 1185, 1194 (Ill. App. Ct. 2014); *Meyers v. Woods*, 871 N.E.2d 160, 170–71 (Ill. App. Ct. 2007); *Vicorp Restaurants v. Corinco Insulating Co.*, 584 N.E.2d 229, 234 (Ill. App. Ct. 1991) (collecting cases). "'Workmanlike' means 'worthy of a good workman,' 'well performed' or 'skillful.'" *Riverfront Lofts Condominium Owners Ass'n v. Milwaukee/Riverfront Properties Ltd. Partnership*, 236 F. Supp. 2d 918, 930 (E.D. Wis. 2002) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 2635 (3d ed. 1986)). Put another way, it signifies "a proper, safe, and non-negligent way of doing something. It describes an ordinary standard of care, the breach of which standard is equivalent to negligence." *Sheldon Livestock Co. v. Western Engine Co.*, 301 N.E.2d 485, 488 (Ill. App. Ct. 1973) (citing *Italia Soc. per Azioni di Nav. v. Oregon Stevedoring Co.*, 310 F.2d 481, 484 (9th Cir. 1962), *j. rev'd*, 376 U.S. 315, 84 S. Ct. 748 (1964)); *see also Riverfront Lofts*, 236 F. Supp. 2d at 930 (noting that warranty of good workmanship is a warranty not to act negligently); *Rozny v. Marnul*, 250 N.E.2d 656, 660–62 (Ill. 1969) (performance of private contract can give rise to duties in tort). The O'Reilly estate and Ruprecht argue that the personal injury suits they filed against Deerfield, for which Deerfield in turn sought contribution from P.S. Demolition as its subcontractor,

are actions that essentially turn on P.S. Demolition's breach of this warranty.

But as Deerfield's assignees, the claim that the O'Reilly estate and Ruprecht are pursuing against P.D. Demolition is one for contribution based on P.S. Demolition's *pro rata* share of liability in *tort* for the accident. *See* 740 Ill. Comp. Stat. § 100/22(a) (recognizing that a claim for contribution arises when "2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death"); *Vroegh v. J&M Forklift*, 651 N.E.2d 121, 125 (Ill. 1995); *Peters v. Riggs*, 32 N.E.3d 49, 69 (Ill. App. Ct. 2015). The warranty of reasonable workmanship is a contractual promise, and a claim for breach of that warranty is a claim sounding not in tort but in contract, as the cases discussing the warranty uniformly recognize. *See Springdale Cemetery Ass'n*, 32 Ill. at 259; *Pyramid Dev.*, 40 N.E.3d at 1194; *Meyers*, 871 N.E.2d at 170–71; *Vicorp Restaurants*, 584 N.E.2d at 234; *Sheldon Livestock Co.*, 301 N.E.2d at 488.

We understand the O'Reilly estate and Ruprecht to argue nonetheless that the underlying tort action for their injuries required them to prove that P.S. Demolition conducted its demolition operations in an unworkmanlike manner and that was why the injuries occurred. They view proof of the breach of P.S. Demolition's reasonable workmanship warranty as essential to their tort claim. To that end, they have produced affidavits from experts (whose testimony they were prepared to present at trial in the state court actions) positing that P.S. Demolition failed to observe appropriate safety procedures at the demolition worksite and in this way breached the warranty of reasonable workmanship and proximately caused the

injuries to O'Reilly and Ruprecht. This, they reason, triggers the policy exception for the warranty that work would be completed in a workmanlike manner.

We may readily assume that proof of P.S. Demolition's failure to conduct its demolition activities in a workmanlike manner—including in particular its failure to observe applicable safety standards—would have a bearing on a claim for construction negligence, which is what the O'Reilly estate and Ruprecht were asserting against both Deerfield and P.S. Demolition. To that extent, there might be some degree of overlap between the underlying negligence claims and a claim for breach of the reasonable workmanship warranty. *See Sheldon Livestock Co.*, 301 N.E.2d at 488 (noting that "the duty under either theory is the same"); *Essex v. Ryan*, 446 N.E.2d 368, 370–71 (one who contracts to perform services may commit both breach of contract and tort of negligence when he negligently fails to perform in workmanlike manner).

But, again, the underlying action pursuant to which Deerfield (and now Ruprecht and the O'Reilly estate) have sought contribution from P.S. Demolition is a tort action for negligence. Whatever relevance to, or overlap with, the breach of P.S. Demolition's warranty of reasonable workmanship conceivably might have to that claim, the underlying claim remains one for the tort of negligence, not breach of warranty. *See Sheldon Livestock Co.*, 301 N.E.2d at 488 (rejecting as "improper" the premise that because a common duty of care underlies both contract and negligence claims, the theory of recovery is identical). The negligence and breach of warranty claims have different legal underpinnings and distinct elements of proof. And the warranty of reasonable

workmanship was one that P.S. Demolition owed to Deerfield, not to O'Reilly and Ruprecht.

Although there is some question whether Deerfield has in fact pursued a claim for breach of this warranty against P.S. Demolition in state court, there is no dispute that the one and *only* claim it assigned to Ruprecht and the O'Reilly estate was one for contribution, not breach of warranty. *See* R. 28-1 Ex. D at 4–5 ¶ 4. So the estate and Ruprecht have no ability to invoke the warranty exception here.

The estate and Ruprecht have suggested on appeal that the warranty exception in the policy gives rise to an ambiguity as to just how far the exclusion for liability assumed by contract extends. But this is not an argument that they pursued below. We agree with StarNet that any such argument was waived.[*]

### III.

For these and the other reasons set forth in the district court's opinion, we AFFIRM the judgment.

---

[*]   Because we conclude that the plain policy language forecloses coverage on the contribution claim, we need not reach StarNet's explanation as to why the warranty language was included as an exception to the exclusion.