LEWIS D. HOPKINS *et al.*, Plaintiffs-Appellees, *v.* STEPHEN R. HARTMAN *et al.*, Defendants-Appellants.

Fourth District    No. 17050

Opinion filed October 29, 1981.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellants.

Marc J. Ansel, of Erwin, Martinkus & Cole, Ltd., of Champaign, and James Koerber, law clerk, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents another facet in the developing body of case law concerning the implied warranty of habitability announced by the supreme court in the landmark case of *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154.

Defendants constructed, principally with their own labor, a duplex residence in Urbana, and used it as an income-producing property for approximately two years by renting it to tenants. In August 1973, plaintiffs purchased the duplex from defendants and continued to rent it out to tenants. At no time did plaintiffs themselves live on the premises, but used the property solely for income-producing purposes. In August 1978, about five years after the purchase, plaintiffs discovered certain defects. A tenant called attention to the fact that the floor was sagging and pulling away from the wall. An inspection of the crawl space underneath the area revealed that the main supports had nearly rotted away. A construction company was engaged by plaintiffs to make repairs which consisted of replacing the main beam, rebuilding the piers, regrading and leveling the crawl space, and installing sheeting and insulation. The repair bill was $5280.28.

Plaintiffs then brought suit against defendants based upon the implied warranty of habitability. The circuit court of Champaign County, sitting without a jury, entered judgment in favor of the plaintiffs and against the defendants in the amount of $5280.28, and this appeal followed.

At trial plaintiffs' expert testified that the damage was the result of excessive moisture in the crawl space. He had inspected the property after the damage was discovered and found only two vents in the crawl space; he further testified that the insulation was installed upside down and that the vapor barrier, which should be above the insulation, was

installed below it. His further testimony was that at least four ventilators should have been present, or two ventilators plus a vapor barrier on the ground as an alternative. He stated that he believed most builders in the area were putting down vapor barriers.

The defendant husband, who had done much of the construction himself, testified that he believed that two vents, plus the moisture barrier on the insulation, would be adequate. He further stated that the moisture barrier was placed below the insulation purposefully in order to take care of the problem. Other evidence on behalf of defendants came from a contractor who testified that he had built about 15 structures over crawl spaces and had never used a vapor barrier on the ground. He believed that defendants' installation was proper.

■■ The precise issue as framed by the pleadings and by the trial court's order is whether the doctrine of *Petersen* should be extended to commercial property never occupied by the owners. We think not and reverse.

The warranty created in *Petersen* is at once a broad one but narrow in its application. After analogizing from the Uniform Commercial Code, the court said:

"\* \* \* [W]e hold that implied in the contract for sale from the builder-vendor to the vendees is a warranty that the house, when completed and conveyed to the vendees, would be reasonably suited for its intended use." (76 Ill. 2d 31, 42, 389 N.E.2d 1154.)

It can thus be observed that the warranty is more than one of habitability; it approaches one of merchantability.

However, in describing the vendees, the court said:

"\* \* \* Many new houses are, in a sense, now mass produced. The vendee buys in many instances from a model home or from pre-drawn plans. \* \* \*. The vendee is making a major investment, in many instances the largest single investment of his life. \* \* \*. The vendee has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a residence." (76 Ill. 2d 31, 40, 389 N.E.2d 1154.)

The person to whom the warranty runs, then, is the relatively unsophisticated buyer, making a large investment, in a structure to be used by him as a residence.

Even a superficial glance at the facts of the instant case demonstrates that plaintiffs are not within the class of persons protected by the *Petersen* doctrine, and we think rightly so. The motivations upon those seeking income-producing property, as well as the pressures upon them, are considerably different from those of the vendee described in *Petersen*. The income-seeker, whether he be purchasing common stocks, chattels, real

estate, or any other form of investment, has ample opportunity to investigate, study, appraise and assess the relative merits and demerits of the subject matter and then to make a calculated judgment as to how profitable it will be. In contrast, the *Petersen* vendee is seeking shelter for himself and his family, oftentimes under considerable pressure brought about by job transfer, increase in family, deterioration of his former neighborhood, or other circumstances over which he has no control. If the *Petersen* warranty is to be extended to an investor in real estate, by extension of logic the Board of Governors of the New York Stock Exchange should warrant that no common stock traded there will ever decrease in value. The relaxation of the rules of *caveat emptor* and merger by the supreme court was intended to protect a consumer, not an investor.

■■ Plaintiffs' principal argument is that they relied heavily on the skill and ability of the defendants and that this should bring them within the rule of *Petersen*. We disagree. As stated above, there was ample opportunity for a second opinion, and plaintiffs apparently had no difficulty in producing an expert when the matter fell into litigation.

We are aware that courts of other States have extended the warranty to those other than the original vendees using the premises for residence purposes. (Compare *Pollard v. Saxe & Yolles Development Co.* (1974), 12 Cal. 3d 377, 525 P.2d 88, 115 Cal. Rptr. 648.) However, this is a policy decision which is beyond the purview of this court.

■■ In addition to the income property distinction, we believe that an additional reason exists for confining the *Petersen* warranty to the factual situation described in that case. Although the *Petersen* decision is limited to real estate (compare *Mellander v. Kileen* (1980), 86 Ill. App. 3d 213, 407 N.E.2d 1137), the supreme court's analogy to the Uniform Commercial Code indicates that it was considering houses built for sale in the manner of merchandise. It was not considering structures built for the builder's own use.

In the latter case it is extremely unlikely that an individual would be tempted to cheat himself by using shabby construction and materials.

It is uncontroverted in the instant case that the defendants constructed the duplex originally for their own use.

Since we have concluded that the *Petersen* warranty does not include the plaintiffs in this case, we need not reach the additional issues raised, *viz.*, the intervening rental between construction and sale, the question of limitations, the question of notice, and the weight of the evidence.

The order of the circuit court of Champaign County is reversed.

Reversed.

TRAPP, P. J., and MILLS, J., concur.