NOTICE

Decision filed 04/23/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250208-U

NO. 5-25-0208

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ACA ILLINOIS TIER 1 STUDENT HOUSING DST, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-LA-165 |
| | ) | |
| LARSON COMPANY, LLC; XFD, LLC; 206 GREEN STREET, LLC; KAP ARCHITECTURE, LLC; and BROEREN RUSSO CONSTRUCTION, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Larson Company, LLC; XFD, LLC; KAP Architecture, LLC; and Broeren Russo Construction, Inc., Defendants-Appellees). | ) | Honorable |
| | ) | Benjamin W. Dyer, |
| | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Clarke concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court's order dismissing plaintiff's complaint is affirmed where plaintiff had no standing to bring its breach of implied warrant of habitability claims, no privity for the remaining breach of implied warranty claims exists, and its claim for negligence was precluded by the *Moorman* doctrine.

¶ 2   Plaintiff, ACA Illinois Tier 1 Student Housing DST (ACA), appeals the circuit court's dismissal of its claims for breach of implied warranty and negligence. The claims were filed against defendants, Larson Company, LLC; XFD, LLC; KAP Architecture, LLC; and Broeren Russo Construction, Inc. (collectively defendants), related to the design and construction of a six-story

1

residential building located at 212 E. Green Street in Champaign, Illinois, purchased by ACA. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4        On December 16, 2022, ACA filed an eight-count verified complaint against defendants[1] in Cook County, Illinois. The Cook County circuit court ultimately determined that venue was improper and transferred the case to Champaign County, Illinois. The introductory paragraph of the complaint claimed that ACA sought "to recover compensatory damages to redress *** Defendants' breaches of their respective duties under professional and construction contracts and their implied warranties, in connection with their development and construction of a six story residential building *** in Champaign, Illinois." ACA alleged that Larson Company, LLC (Larson) and XFD, LLC (XFD) (collectively Developers) had a development plan to sell the building after construction and that Developers entered into a consulting contract with KAP Architecture, LLC (Architect). No copy of either the development plan or the contract with Architect was attached to the complaint. ACA also claimed that pursuant to the contract, Architect developed a design that included roof and roof framing plans, the latter of which required R-15 Batt insulation in the wall stud cavity or blown-in insulation to the ceiling. ACA further alleged that Developers entered into a construction contract with Broeren Russo Construction, Inc. (Builder), naming Builder as the general contractor, which required it to manage and oversee the construction of the building. No copy of the construction contract was attached to the complaint. ACA claimed it was a third-party beneficiary to both the architect and construction contracts.

---

[1]While 206 Green Street was listed as a defendant in the caption, service was never obtained on 206 Green Street and none of the allegations listed 206 Green Street as a defendant. As such, 206 Green Street is irrelevant as to this appeal.

¶ 5    In the complaint, ACA also alleged that it took possession of the building from 206 Green Street, LLC (Seller) on September 26, 2018, pursuant to a sales agreement executed on July 23, 2018. No copy of the sales agreement was attached to the complaint. ACA alleged that property tenants reported moisture problems and odors in the hallways and units in 2021 and 2022. It also alleged that it notified Developers and Builder of the moisture problems in 2022, and two inspections, one by ACA and the other by Builder, confirmed a faulty roof design was the cause of the problem.

¶ 6    ACA's complaint alleged fraudulent concealment against Developers (count I), breach of implied warranty of habitability against Developers (count II), breach of construction agreement against Builder (count III), breach of implied warranty of habitability against Builder (count IV), breach of implied warranty of good workmanship against Builder (count V), breach of the architecture agreement against Architect (count VI), breach of implied warranty of specifications against Architect (count VII), and negligence against Architect (count VIII). Each count requested compensatory damages in excess of $1.6 million.

¶ 7    On February 22, 2023, Builder filed a combined motion to dismiss counts III, IV, and V pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). Pursuant to section 2-619 of the Code (*id.* § 2-619), Builder's motion contended that all of ACA's claims required contractual privity with Builder, but no such privity existed. It also claimed that no contract existed between Builder and ACA, and ACA failed to overcome the presumption that it was not an intended third-party beneficiary of Builder's contract with Seller. The motion further argued that even if ACA was an intended third-party beneficiary, the contract between Builder and Seller required binding arbitration.

3

¶ 8    Pursuant to section 2-615 of the Code (*id.* § 2-615), Builder argued that plaintiff failed to provide factually supported allegations of contractual privity with Builder in any of the three counts against Builder, failed to allege that it performed all obligations under any contract which was a necessary element of a breach of contract claim, and further alleged that Builder followed the planned designs for the roof, which logically could not form the basis of any of ACA's claims. Documents attached in support of the motion to dismiss included: (1) the underlying complaint and (2) the affidavit of Jim Lopez, president of Builder, which stated that Builder's work was governed by two contracts: (a) the A133 agreement and (b) the A201 agreement, both of which were also attached to the motion to dismiss. The former was an agreement between Seller and Builder that listed the architect as KAP Architecture, LLC (Architect). The latter agreement was between the owner, which was listed as Larson Company, and Architect.

¶ 9    A motion to dismiss was also filed by Architect requesting dismissal of counts VI, VII, and VIII for the same reasons provided by Builder, except no claim of arbitration was presented by Architect. As to the count VIII claim of negligence, Architect contended dismissal was required because ACA was seeking recovery of economic loss, which was not recoverable in tort pursuant to *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 85-86 (1982).

¶ 10    On March 24, 2023, ACA filed a response to Builder's motion to dismiss claiming privity existed because Larson marketed itself as "an investor, developer and manager of student housing assets" and had a website that reflected sale of its various properties, including the building at issue. ACA further argued that breach of warranty did not require strict contractual privity and a footnote contended that third-party beneficiaries were not bound by arbitration clauses. On the same date, ACA also filed a response to Architect's motion to dismiss. Therein, ACA stated that it established that Architect and Builder intended to benefit ACA as a third-party beneficiary,

4

which allowed the breach of contract and breach of implied warranty of specifications claims to remain. It further argued that the economic loss doctrine did not apply where the alleged defects posed a risk of harm to people and property, a threat to safety, or were hazardous or dangerous.

¶ 11    Replies were filed by Architect on April 3, 2023, and Builder on April 6, 2023. On April 12, 2023, the circuit court issued an order prohibiting further briefing. The order further stated that written rulings on the motion would be issued later. However, no ruling was issued and instead, on November 3, 2023, the Cook County circuit court issued an order granting defendants' motion to transfer venue to Champaign County.

¶ 12    On January 22, 2024, Developers moved to dismiss counts I and II pursuant to section 2-615 of the Code. As to count I (fraudulent concealment), they argued that no purchase agreement was attached to the complaint as required by section 2-606 of the Code (735 ILCS 5/2-606 (West 2022)). They also contended that there were no allegations that they intended to induce a false belief. The motion further argued that ACA could have discovered the truth through reasonable inquiry or inspection and there was no allegation that Developers prevented either. The motion noted the lack of any allegation that ACA made reasonable inquiries or inspection and instead relied on an "Offering Memorandum" without attaching that document either. It further alleged that while ACA claimed that Seller was defendant's affiliate, no factual information for that allegation was included.

¶ 13    As to count II (breach of implied warranty of habitability), Developers argued that no copy of any contract involving Developers was attached to the complaint and neither was the sales agreement. They further argued that count II of the complaint contained no allegations and instead relied on legal conclusions claiming that negligent and improper design and construction materially violated implied warranties of habitability; however, ACA failed to identify any duties

owed by the Developers and instead relied upon allegations of negligence by Architect and Builder.

¶ 14    On February 5, 2024, ACA filed a response arguing that it was not required to attach the sales agreement because the suit was not based on that agreement. It argued that Developers stated there were no items in need of repair in the offering memorandum and repaired the moisture and mold conditions by cleaning and repainting the units so no discovery could be made through an inspection. ACA further claimed, citing *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183 (1982), that a warranty of habitability extended to a subsequent purchaser, like the initial purchaser, who had little opportunity to inspect the construction methods.

¶ 15    On June 5, 2024, the circuit court issued an order on the motions to dismiss. As to Builder, the court found that the contract between Builder and the owner, Larson Company, excluded any other contractual relationship, which undermined ACA's claim of third-party beneficiary status. Because the defect could not be cured by repleading, Builder's motion to dismiss as to the breach of contract claim (count III) was granted with prejudice. The court further noted that even if ACA were a third-party beneficiary, it would be obligated to engage in mediation and then binding arbitration. As to the warranty of habitability claim (count IV), the court relied on *Redarowicz* to state that privity was not required; however, the circuit court found that expansion of the warranty in *Redarowicz* to include subsequent purchasers did not apply to ACA. The court, citing *Hopkins v. Hartman*, 101 Ill. App. 3d 260 (1981), noted that ACA was neither unknowledgeable in construction practices nor an unsophisticated home buyer and that implied warranties of habitability did not apply to investment property. Therefore, the court dismissed count IV with prejudice. As to the warranty of good workmanship claim (count V), the court stated that the claim lacked privity and further noted that ACA's complaint did not contend that the workmanship was

bad or that Builder deviated from the plans or designs of the building. Therefore, the court dismissed count V, with prejudice.

¶ 16    The court next addressed counts VI-VIII against Architect. Starting with the breach of contract claim (count VI), the court noted that the contract was between Architect and Builder and the contract specifically stated that no third-party beneficiary was contemplated. As such, the court dismissed count VI, with prejudice. As to the implied warranty of specifications (count VII), the court found, citing *Hopkins*, that the purchase by a corporation of a 111-unit building for use as an investment or rental property precluded reliance on the implied warranty of specifications and dismissed that count with prejudice.

¶ 17    As to the negligence claim (count VIII), the court addressed Architect's reliance on the *Moorman* doctrine and its preclusion of any tort claim. The court noted three exceptions to the *Moorman* economic loss rule that existed and ACA claimed two applied: (1) a sudden and dangerous occurrence; and (2) claims of professional negligence. As to ACA's former argument, citing *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611, 620 (2010), and *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 150 Ill. App. 3d 681, 787 (1986), the circuit court noted that case law previously found that mold was not a sudden and dangerous occurrence. It also noted, citing *Mayer v. Chicago Mechanical Services, Inc.*, 398 Ill. App. 3d 1005, 1010 (2010), that a different court reached the opposite conclusion. Ultimately, the circuit court found the first exception did not apply because the corporation did not suffer from a respiratory problem, was incapable of sustaining a personal injury, and was not even a resident of the building.

¶ 18    As to ACA's latter exception to the *Moorman* doctrine based on architectural professional negligence, the court held that no case cited by ACA—in support of its claim that the economic

loss doctrine did not preclude a claim for professional negligence—involved the economic loss doctrine. It further found the decision in *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 316-17 (1990), precedential. Ultimately, the court stated that "professional services" was not a fourth exception to the economic loss rule and dismissed count VIII, with prejudice, because no reformation would fix the defects.

¶ 19    Finally, the court addressed counts I and II against Developers. Count I, which alleged fraudulent concealment, was dismissed. However, prejudice was not attached to the dismissal, and ACA was granted leave to file an amended complaint by June 28, 2024. Count II, which alleged breach of implied warranty of habitability, was dismissed with prejudice because the court, again citing *Hopkins*, found that the implied warranty of habitability did not apply to investment property.

¶ 20    In addition to filing a first amended complaint on June 28, 2024, ACA also filed a motion to reconsider the circuit court's previous rulings as to counts II, IV, V, VII, and VIII. As to the latter filing, ACA contended that the circuit court erred in its previous application of existing law to the facts. It first noted that the court erroneously found that Architect's contract was with Builder, not Developers, and asked that it be allowed to replead since it did not have the contract attached to the original complaint. It further contended that *Hopkins* was old law that was previously criticized by the Idaho Supreme Court, citing *Tusch Enterprises v. Coffin*, 740 P.2d 1022 (Idaho 1987), and was never applied in Illinois thereafter. It also claimed that the court's ruling regarding Architect ignored *Ferentchak v. Village of Frankfort*, 121 Ill. App. 3d 599, 608 (1984), which would not bar negligence under the economic loss doctrine when no other remedy existed for the architect's negligence. Defendants filed separate responses to ACA's motion for

8

reconsideration with each requesting affirmation of the dismissal. Thereafter, ACA filed separate replies to the responses.

¶ 21 On November 19, 2024, the circuit court issued an order denying ACA's motion to reconsider. On December 12, 2024, ACA moved the court to certify its ruling pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) (no reason to delay appeal or enforcement) or Illinois Supreme Court Rule 308(a) (eff. Oct. 1, 2019) (question of law for which there is substantial ground for difference of opinion and immediate appeal would materially advance the termination of the litigation). On February 13, 2025, the court issued an order granting plaintiff's motion to certify pursuant to Rule 304(a).

¶ 22                                    II. ANALYSIS

¶ 23 On appeal, ACA raises eight issues stemming from the circuit court's dismissal with prejudice pursuant to sections 2-615 and 2-619(a)(9) of the Code (735 ILCS 5/2-615, 2-619(a)(9) (West 2022)) of its claims in counts II, IV, V, VII, and VIII. A motion to dismiss under section 2-615 "challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). All well-pleaded facts are taken as true, and reasonable inferences are drawn in the plaintiff's favor. *Id.* The critical question in reviewing a section 2-615 motion is whether the allegations are sufficient to state a cause of action upon which relief may be granted. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20. A complaint should only be dismissed under section 2-615 where no set of facts can be provided which would entitle the plaintiff to recovery. *Id.*

¶ 24 Conversely, a motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the complaint but asserts an affirmative defense that defeats the claim. *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 19. Again, the court must accept as true all well-pleaded facts, and

9

inferences arising therefrom, but does not accept mere conclusions unsupported by specific facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. We review, *de novo*, the circuit court's rulings under either section 2-615(a) or section 2-619(a) of the Code. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).

¶ 25 ACA initially contends, as to counts II, IV, and V, that the circuit court erred in holding that the implied warranties of habitability and good workmanship do not apply to income-producing property even when latent defects are in issue. Based on our review of the history behind the implied warranty of habitability, we disagree.

¶ 26 In Illinois, the implied warranty of habitability originated in *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 352-53 (1972), a case that involved nonpayment of rent in which the tenant raised an affirmative defense stemming from the landlord's promise to repair. The Illinois Supreme Court considered *Ingalls v. Hobbs*, 31 N.E. 286, 286 (Mass. 1892), and *Javins v. First National Realty Corp.*, 428 F.2d 1071, 1072-76 (D.C. Cir. 1970), both of which addressed the implied warranty of habitability applied in other areas. *Jack Spring*, 50 Ill. 2d at 360-66. The court noted that *Javins* was based on consumer protection cases and changes in trends related to repairs by tenants and landlords. *Id.* at 363-66. Ultimately, the court found *Javins* persuasive and held that "included in the contracts, both oral and written, governing the tenancies of the defendants in the multiple unit dwellings occupied by them, is an implied warranty of habitability ***." *Id.* at 366. As such, tenants of leased property were the first parties permitted to bring claims under the implied warranty of habitability against their landlords in Illinois. *Id.*

¶ 27 The Illinois Supreme Court later expanded the implied warranty of habitability to include buyers of new residential homes against a builder-vendor thereby ending the doctrines of *caveat emptor* and merger as to land purchases. *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31,

10

39-40 (1979). Prior to *Petersen*, if a new home buyer failed to discover defects before the transfer of property, *caveat emptor* prevented him from maintaining a suit against the builder. *Id.* at 38. The doctrine of *caveat emptor* essentially required the purchaser to take title of property at his own risk. *Checkley & Co. v. Citizens National Bank of Decatur*, 43 Ill. 2d 347, 349 (1969). Further, under the merger doctrine, agreements between a new home seller and buyer merged with the deed and if the deed did not include reservations or warranties that might have been in the building contract, once the buyer received the property via the deed, he had no right of recourse regarding the quality of his property. *Petersen*, 76 Ill. 2d at 38.

¶ 28    The *Petersen* court noted "the vast change" that had "taken place in the method of constructing and marketing new houses" and found the doctrine was available for latent defects. *Id.* at 39-40. In rendering the decision, the court classified the buyer as a person relying on a model home or pre-drawn plans, with little or no opportunity to inspect construction despite the buyer making "in many instances the largest single investment of his life." *Id.* at 40. The court further classified the residential buyer as a person with a lack of knowledge in construction practices, which forced reliance on "the integrity and skill of the builder-vendor" and noted that while inspections were possible, latent defects would not be discoverable if the house was already complete. *Id.* Based on those public policy reasons, the *Petersen* court expanded the implied warranty of habitability to include residential home purchasers and the vendor/builder of the home to alleviate the harshness of the doctrines of merger and *caveat emptor*.

¶ 29    The Illinois Supreme Court later expanded the implied warranty of habitability to subsequent purchasers of a residential home; however, that expansion was "limited to latent defects which manifest themselves within a reasonable time after the purchase of the house." *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 185 (1982). In so doing, the court also held, "While the

11

warranty of habitability has roots in the execution of the contract for sale [citation], we emphasize that it exists independently [citation]. Privity of contract is not required." *Id.* at 183.

¶ 30　The issue here is whether the doctrine should be further expanded to include purchasers of commercial income-producing property. Notably, the implied warranty of habitability extends to the board of managers for a condominium pursuant to statutory authority provided by the Illinois legislature in the Condominium Property Act. See 765 ILCS 605/9.1(b) (West 2022). Section 9.1(b) of the Condominium Property Act provides the board of managers "standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interest may appear." *Id.* The board of managers is basically the board of directors of the corporation. *Id.* § 18.1(d).

¶ 31　While the doctrine is generally limited to one-unit residential homes and condominiums, in *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163, 167 (1983), the appellate court addressed standing of a townhouse owners association as "owner of the common land, as third-party beneficiary of the contract between the Developer and the homeowners, or as a representative of the homeowners." The appellate court ultimately found that "under the particular circumstances" of that case, the association had "standing to sue as a representative of the individual townhouse owners" because the association was created to handle the common areas of the townhouse property. *Id.* at 169. However, credence in the *Briarcliffe* decision is undermined by the Illinois Supreme Court's later decision that precluded reliance on a warranty of habitability theory in a recreational building, in which no one resided, which was the basis of the underlying claim in *Briarcliffe*. See *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 426 (1999).

¶ 32    Equally relevant are the cases that reached a different conclusion and denied application of the warranty of habitability for nonresidential property or commercial leases. In *J.B. Stein & Co. v. Sandberg*, 95 Ill. App. 3d 19 (1981), the court did not extend the implied warranty of habitability established in *Jack Spring* to commercial leases, noting that the decision in *Jack Spring* "limited its decision to multiple dwelling units." *Id.* at 25-26 (citing *Elizondo v. Perez*, 42 Ill. App. 3d 313 (1976), *Clark Oil & Refining Corp. v. Banks*, 34 Ill. App. 3d 67 (1975), *Ing v. Levy*, 26 Ill. App. 3d 889 (1975), and *Germania Federal Savings & Loan Ass'n v. Jacoby*, 23 Ill. App. 3d 145 (1974)).

¶ 33    Similarly, in *Hopkins v. Hartman*, 101 Ill. App. 3d 260, 262-63 (1981), the court held that owners of a duplex residence were not within the class of persons protected by an implied warranty of habitability and extension was not warranted for commercial property never occupied by the owners. It noted that the motivation of an income-producing property owner had different pressures than the *Petersen* purchaser, stating, "The income-seeker, whether he be purchasing common stocks, chattels, real estate, or any other form of investment, has ample opportunity to investigate, study, appraise and assess the relative merits and demerits of the subject matter and then to make a calculated judgment as to how profitable it will be." *Id.*

¶ 34    The *Hopkins* court noted, in contrast, the *Petersen* purchaser was "seeking shelter for himself and his family, oftentimes under considerable pressure brought about by job transfer, increase in family, deterioration of his former neighborhood, or other circumstance over which he has no control." *Id.* at 263. The court further stated:

> "If the *Petersen* warranty is to be extended to an investor in real estate, by extension
> of logic the Board of Governors of the New York Stock Exchange should warrant
> that no common stock traded there will ever decrease in value. The relaxation of

13

the rules of *caveat emptor* and merger by the supreme court was intended to protect a consumer, not an investor." *Id.*

¶ 35    ACA argues that the *Hopkins* decision is old and was not followed by the Idaho Supreme Court, in *Tusch Enterprises v. Coffin*, 740 P.2d 1022 (Idaho 1987). In *Tusch Enterprises*, the court disagreed with the ruling in *Hopkins* and extended the implied warranty of habitability to "residential dwellings purchased for income-producing purposes which have never been occupied by the buyers." *Id.* at 1032. While relevant, we do not find the ruling persuasive, especially when such a substantial variance in the expansion or reduction of rights under the implied warranty of habitability would create conflicting case law within our state based on the decision in *Hopkins*, a case that while aged, has never been overruled.

¶ 36    Notably, the most recent decision addressing the implied warranty of habitability by the Illinois Supreme Court curtailed expansion of the doctrine to include subcontractors where there was no contractual relationship. See *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 30. As noted therein, the warranty of habitability is "implied by the courts as a matter of public policy" (*id.* ¶ 23); however, the court declined to extend public policy even when denial of the claim left the owner without a judicial remedy. See *id.* ¶ 28.

¶ 37    As noted above, the underlying basis for the adoption and expansion of the implied warranty of habitability to homes was to protect buyers of residential homes from latent building defects causing the home to be uninhabitable where the buyer was unsophisticated in construction practices and reliant on "the integrity and the skill of the builder-vendor." See *Petersen*, 76 Ill. 2d at 39-40. Further, expansion of the warranty provided in the 1982 decision issued in *Redarowicz* was subsumed, in part, by the Residential Real Property Disclosure Act (RRPDA) (765 ILCS 77/1 *et seq.* (West 2024)), enacted by the Illinois legislature and made effective on October 1, 1994.

14

Notably sections 20 and 55 of the RRPDA, respectively, require the seller to provide certain disclosures to the purchaser and sets forth remedies for violations of the failure to provide said disclosure. See *id.* §§ 20, 55.

¶ 38 In the 30 years since that enactment, the Illinois legislature did not promulgate similar legislation for commercial purchasers. Nor has the Illinois Supreme Court expanded the implied warranty of habitability to include both residential and commercial purchases. Based on the history of the implied warranty of habitability in Illinois, and the lack of expansion by either the legislature or our supreme court, we cannot find that a commercial purchaser of a six-story, 111 residential unit commercial student housing building stands in a position similar to an unsophisticated purchaser of residential property in which the purchaser and his family reside. Accordingly, we decline ACA's request to expand the implied warranty of habitability to the purchase of commercial property.

¶ 39 ACA next argues, relying on *Redarowicz*, that the circuit court erred by dismissing its claims for breaches of the implied warranties of habitability against Developers and Builder (counts II and V) because a subsequent purchaser's claim for breach of the implied warranty of habitability does not require strict contractual privity. While we agree that *Redarowicz* appeared to abolish a privity requirement, the *Redarowicz* language must be considered and reconciled with recent cases addressing the same issue. Notably, contrary to the 1982 language in *Redarowicz*, in 2018, the Illinois Supreme Court expressly required contractual privity between the plaintiff and the defendant in actions involving economic loss. *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 21. The decision further clarified that the loss covered by implied warranty of habitability was "pure economic loss." *Id.* ¶ 30. At best, *Redarowicz* is related solely to the narrow

15

principle implied by the right of assignment for *residential* cases involving subsequent purchasers that invoke the implied warranty of habitability. *Id.* ¶ 27.

¶ 40 Here, no argument was raised that the circuit court erred in finding that ACA was not a third-party beneficiary to any of the contracts between defendants. Nor does ACA dispute that it was not in privity with either Developers or Builder and that its claims against them were for economic loss under the implied warranty of habitability. Moreover, even if privity were not required, the claims would remain untenable because it is our position that the implied warranty of habitability is inapplicable to commercial, income-producing, purchases. Under the facts in this case, and the language in *Sienna Court Condominium Ass'n*, we find no error with the dismissal of the implied warranty claims in counts II and V.

¶ 41 ACA's third and fourth arguments contend that the circuit court erred in dismissing its claim for breach of implied warranty of good workmanship (count V) against Builder. ACA first argues the dismissal was erroneous because the circuit court relied on its previous holding that implied warranty claims did not extend to corporate income-producing purchasers. It further argues that the implied warranty of good workmanship does not require strict privity. We disagree with both claims.

¶ 42 "Under the implied warranty of good workmanship, 'one who contracts to perform construction work impliedly warrants to do the work in a reasonably workmanlike manner.' " *Smith v. Jones*, 2025 IL App (5th) 231136, ¶ 23 (quoting *Harmon v. Dawson*, 175 Ill. App. 3d 846, 849 (1988)). " '[T]he failure to so perform constitutes a breach of contract.' " *Id.* (quoting *Harmon*, 175 Ill. App. 3d at 849). Here, there is no contract between ACA and Builder. While the implied warranty of habitability has been expanded to include subsequent purchasers of residential property (see *Petersen*, 76 Ill. 2d at 40), ACA provides no basis to extend the implied warranty of

16

good workmanship in a similar manner and, for the reasons set forth above, we do not believe the warranty would extend to corporate-owned investor property.

¶ 43    However, even if it did, ACA's contention that the implied warranty of good workmanship does not require strict contractual privity, has no merit. "Privity of contract is '[t]hat connection or relationship which exists between two or more contracting parties.' " *Collins Co. v. Carboline Co.*, 125 Ill. 2d 498, 511 (1988) (quoting Black's Law Dictionary 1079 (5th ed. 1979)). " 'Privity requires that the party suing has some contractual relationship with the one sued.' " *Id.* (quoting *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1076 (1982)).

¶ 44    Here, it was undisputed that ACA had no contractual relationship with Builder. Notably, all of the cases cited by ACA, in support of its argument that no privity is necessary, were based on underlying contracts. The first two cases involved contracts and were also based on nondelegable duties of providing seaworthy vehicles under maritime and admiralty law, which provides additional obligations and duties inapplicable here. See *Waterman S.S. Corp. v. Dugan & McNamara*, 364 U.S. 421, 422 (1960); *Orgulf Transport Co. v. Hill's Marine Enterprises, Inc.*, 188 F. Supp. 2d 1056, 1060 (S.D. Ill. 2002).

¶ 45    The remaining cases cited by ACA regarding privity were also based on an underlying contractual relationship. While *Stark Excavating, Inc.* involved the implied warranty of good workmanship, the claims addressed therein were related to contractual obligations between the contractor and a subcontractor. *Stark Excavating, Inc. v. Carter Construction Services, Inc.*, 2012 IL App (4th) 110357, ¶ 10. Similarly, in *Ruprecht*, there was an underlying contract between the demolition company and the injured plaintiffs' employer. *StarNet Insurance Co. v. Ruprecht*, 3 F.4th 342, 346-47 (7th Cir. 2021). While the employer assigned its claim for contribution to the injured employees and there was privity between the employer and the demolition company that

would support a claim for implied warranty of good workmanship, the employer did not assign the contractual claim to the injured plaintiffs, and therefore recovery from the insurance company was denied because there was no privity between the injured employees and the demolition company. *Id.* at 347-48.

¶ 46 Here, there is neither a contract nor privity between ACA and Builder. The privity requirement for economic loss claims remains viable in Illinois. See *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶¶ 21, 30. Accordingly, we cannot find it was error for the circuit court to dismiss count V against Builder based on ACA's lack of privity with Builder.

¶ 47 ACA's fifth argument contends that the circuit court erred by assuming that Developers, not Builder, contracted with Architect. However, it was ACA's own allegation on which the circuit court relied. Plaintiff alleged in paragraph 14, "Pursuant to their joint development plan, Developers entered into a consulting contract (the 'Architecture Contract') with Architect for the design of the Building." While no copy of the contract was attached with the complaint, a copy of the contract was submitted by Builder as an attachment in the motion to dismiss. As noted above, the court was required to accept any "well-pleaded facts and all reasonable inferences that may be drawn from those facts" as true and further construe the complaint's allegations in the light most favorable to the plaintiff. *Marshall*, 222 Ill. 2d at 429. Therefore, any error stems from ACA's own allegations.

¶ 48 It is equally relevant that the issue was only mentioned in ACA's motion for reconsideration. As noted above, the contract at issue was filed as an attachment to Builder's motion to dismiss which was filed in February 2023. At no time between February 2023 and June 2024, when the court issued its ruling on the motions to dismiss, did ACA move to amend its complaint to comport with the contracts attached to Builder's motion to dismiss. The doctrine of

"invited error" prohibits a party from complaining of an error on appeal "which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). As the court's order was based on ACA's allegations, we find no error.

¶ 49 Sixth, ACA argues that the circuit court erred when it dismissed ACA's claim for warranty of good workmanship in count V because under Illinois law, a general contractor assumes the duty to supervise the work of an architect or a subcontractor. While case law supports ACA's position, it is unclear why the doctrine would be beneficial to ACA where it was not in privity with either Builder or Architect. Notably, in *A.W. Wendell & Sons, Inc. v Qazi*, 254 Ill. App. 3d 97, 113-14 (1993), cited by ACA, there was privity between the contractor and the owner. The remaining cases cited are from different states and federal circuits and so, at best, are only mildly persuasive, given the lack of privity seen here.

¶ 50 ACA's reliance on section 818 Corpus Juris Secundum, Contracts, is equally misplaced. See 17B C.J.S. *Contracts* § 818 (2025). The section states, "A builder is not liable for defects due to the plans unless the contractor drew them or warranted their correctness or guaranteed the result or knew or should have known about the defects but failed to point them out to the owner or architect." *Id.* ACA's complaint did not allege that Builder drew the architectural plans, that Builder warranted the plans, or that Builder knew, or should have known, that Architect's plans were defective. Instead, the complaint merely alleged that Builder "follow[ed] Architect's improper architectural design and building plans for the construction of the roof of the Building" and then alleged that Builder's following Architect's plan "materially violated Builder's implied warranty of good workmanship pursuant to the Construction Contract." As such, ACA's allegations were insufficient to make a claim of implied warranty of good workmanship.

¶ 51    ACA's reliance on *Clark v. Scanlan*, 33 Ill. App. 48, 53 (1889), for a similar premise is equally unwarranted. In *Clark*, the court found that a contractor owed a duty to seek direction from the architect if there was any doubt as to the details of the architectural plan; however, if the contractor instead "relied on his own skill he would have to bear the consequences." *Id.* Again, ACA did not allege that Builder was aware of the architectural defect. Nor was there any allegation that the Builder questioned Architect's plan. Instead, the allegation was Builder followed Architect's plan. Because the elements for implied warranty of good workmanship were not pled, and even if pled, did not have the privity required for economic loss claims, we affirm the circuit court's dismissal of count V.

¶ 52    ACA's seventh and eighth issues contend that the circuit court erred by dismissing its claim (count VII) against Architect based on Architect's breach of the implied warranty of reasonable judgment, skill and care or specifications because under Illinois law, an architect provides an implied warranty. While numerous issues are raised on this topic, the count is easily dismissed under the language in *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 30, precluding reliance on implied warranties beyond contractual parties. Further, support for the dismissal is found in *Board of Managers of Park Point at Wheeling Condominiums Ass'n v. Park Point at Wheeling, LLC*, 2015 IL App (1st) 123452, ¶¶ 22-24, which noted that "courts have consistently declined" to hold architects and other service providers liable under implied warranty theories and further noted plaintiff's reliance on *Minton v. The Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983), which was the same case overruled by *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 25.

¶ 53    ACA's final issue claims the circuit court erred by dismissing ACA's claim for professional negligence (count VIII) against Architect. We again disagree. ACA's argument before the circuit

court confirms that its request for "negligence" stemmed from the contract between Builder and Architect and was not a tort claim. The relevance of the *Moorman* economic doctrine (see *Moorman Manufacturing Co.*, 91 Ill. 2d at 91) undermines ACA's argument. See *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 20.

¶ 54 "The *Moorman* doctrine is intended to preserve the distinction between tort and contract." *Id.* ¶ 21. As previously explained by the court, and recently reiterated again, in *Sienna Court Condominium Ass'n*:

> "In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations. [Citations.] The doctrine reflects the principle that there are varying degrees of quality, all commercially acceptable, that parties to a commercial transaction are free to bargain over if they choose. For example, an architect's selection of the construction materials to be used in a particular structure will depend in large part on the amount of money the owner is willing to spend on the project. Disputes later arising from the character of the materials used should be determined under principles of contract law, and should be controlled by the requirements imposed by the parties' own undertaking. In that instance, the contract itself serves best to define the parties' respective rights and obligations." (Internal quotation marks omitted.) *Id.*

¶ 55 Here, ACA repeatedly advised the circuit court that its negligence claim against Architect was founded in contract, not tort. However, ACA was not a party to any of the contracts and failed to argue on appeal that the circuit court erred in finding it was not a third-party beneficiary under any of the contracts. With no contract and no privity, ACA has no contractual claim against

21

Architect. See *id.* ("In general then, an action for economic loss requires the plaintiff to be in contractual privity with the defendant."); *2314 Lincoln Park West Condominium Ass'n*, 136 Ill. 2d at 316-17 (declining to allow tort claim against an architect where the claim was founded in economic loss). As such, we affirm the circuit court's dismissal of count VIII.

¶ 56                                III. CONCLUSION

¶ 57    For the above-stated reasons, we affirm the circuit court's dismissal with prejudice of counts II, IV, V, VII, and VIII.

¶ 58    Affirmed.